Omar G. Qureshi** (CA 323493)
Max A. Schoening (CA 324643)
QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 786-3478

Lalitha D. Madduri* (CA 301236)
Jacob D. Shelly*** (D.C. 90010127)
Tina Meng Morrison*** (D.C. 1741090)
William K. Hancock*** (D.C. 90002204)
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652

*Application for admission pending
**Application for admission forthcoming
***Pro hac vice application forthcoming

Counsel for Proposed Intervenors
Vet Voice Foundation and California
Alliance for Retired Americans

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL ISSA,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>SHIRLEY N. WEBER, in her official capacity as Secretary of State of California,<br><br>　　　　Defendant. | Case No: 25-cv-598-AGS-JLB<br><br>**VET VOICE FOUNDATION AND CALIFORNIA ALLIANCE FOR RETIRED AMERICANS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS** |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 4

    I.    California's mail voting laws.......................................................................... 4

    II.   Proposed Intervenor-Defendants. ................................................................. 7

ARGUMENT .......................................................................................................... 11

    I.    Vet Voice and CARA are entitled to intervene as of right under Rule 24(a). .... 11

        A.   The motion is timely. ..................................................................... 12

        B.   The disposition of this case will impair Vet Voice's and CARA's significant interest in promoting and protecting their members' and constituents' voting rights ................................................................. 13

        C.   Vet Voice's and CARA's interests are not adequately represented by the existing parties in this case. ...................................................... 17

    II.   Alternatively, Vet Voice and CARA should be granted permissive intervention under Rule 24(b)........................................................................ 21

CONCLUSION ....................................................................................................... 23

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*1789 Found. Inc., v. Fontes*,
   No. CV-24-02987, 2025 WL 834919 (D. Ariz. Mar. 17, 2025) ............... 16, 17, 18

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ................................................................................ 21

*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022) .................................................................................... 19, 20

*Bognet v. Degraffenreid*,
   141 S. Ct. 2508 (2021) .......................................................................................... 2

*Bognet v. Sec'y Commonwealth of Pa.*,
   980 F.3d 336 (3d Cir. 2020) .................................................................................. 2

*Bost v. Ill. State Bd. of Elections*,
   114 F.4th 634 (7th Cir. 2024) ............................................................................... 2

*Bost v. Ill. State Bd. of Elections*,
   No. 22-CV-02754, 2023 WL 4817073 (N.D. Ill. July 26, 2023) ........................... 2

*Brumfield v. Dodd*,
   749 F.3d 339 (5th Cir. 2014) .............................................................................. 13

*Cal. ex rel. Lockyer v. United States*,
   450 F.3d 436 (9th Cir. 2006) ........................................................................... 6, 13

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) .................................................................... *passim*

*County of San Miguel v. MacDonald*,
   244 F.R.D. 36 (D.D.C. 2007) .............................................................................. 16

ii

*Democratic Nat'l Comm. v. Hobbs*,
    948 F.3d 989 (9th Cir. 2020)...................................................................... 16

*Democratic Nat'l Comm. v. Reagan*,
    329 F. Supp. 3d 824 (D. Ariz. 2018)........................................................ 16

*Democratic Party of Va. v. Brink*,
    No. 3:21-cv-756, 2022 WL 330183 (E.D. Va. Feb. 3, 2022) ................... 20

*Donald J. Trump for President, Inc. v. Cegavske*,
    No. 2:20-CV-1445, 2020 WL 5229116 (D. Nev. Aug. 21, 2020)........... 19

*Donald J. Trump for President, Inc. v. Murphy*,
    No. CV-20-10753, 2020 WL 6573382 (ZNQ) ........................................ 22

*Donald J. Trump for President, Inc. v. Way*,
    No. 20-10753, 2020 WL 6204477 (D.N.J. Oct. 22, 2020) ......................... 2

*Donald J. Trump for President, Inc. v. Way*,
    492 F. Supp. 3d 354 (D.N.J. 2020) ............................................................ 2

*E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021)...................................................................... 15

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ................................................................... 19

*Hoopa Valley Tribe v. U.S. Bureau of Reclamation*,
    648 F. Supp. 3d 1196 (E.D. Cal. 2022)..................................................... 17

*Issa v. Newsom*,
    No. 20-CV-01044, 2020 WL 3074351, (E.D. Cal. June 10, 2020) .......... 16, 19, 20

*Kobach v. U.S. Election Assistance Comm'n*,
    No. 13-CV-4095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013)............... 22

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022)....................................................................... 17

iii

*League of United Latin Am. Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997)..................................................................... 12

*League of Women Voters of N.C. v. North Carolina,*
    No. 1:13CV660, 2014 WL 12770081 (M.D.N.C. Jan. 27, 2014)...................... 22

*Mi Familia Vota v. Fontes,*
    129 F.4th 691 (9th Cir. 2025)...................................................................... 15

*Paher v. Cegavske,*
    No. 3:20-CV-00243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020)................. 19, 21

*Perry v. Schwarzenegger,*
    630 F.3d 898 (9th Cir. 2011)....................................................................... 13

*Pub. Int. Legal Found., Inc. v. Winfrey,*
    463 F. Supp. 3d 795 (E.D. Mich. 2020)......................................................... 22

*Republican Nat'l Comm. v. Wetzel,*
    120 F.4th 200 (5th Cir. 2024)....................................................................... 3

*Republican Nat'l Comm. v. Wetzel,*
    No. 1:24-cv-00025 (S.D. Miss. 2024).............................................. 3, 9, 11, 18, 21

*Sagebrush Rebellion Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983)................................................................... 17, 21

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993)...................................................................... 12

*Splonskowski v. White,*
    No. 1:23-CV-00123, 2024 WL 402629 (D.N.D. Feb. 2, 2024)....................... 2, 3, 6

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001).............................................................. 13, 15, 18

*Trbovich v. United Mine Workers of Am.,*
    404 U.S. 528 (1972) ........................................................................ 17, 18, 20, 21

iv

*W. States Trucking Ass'n v. Schoorl*,
   No. 2:18-CV-1989, 2018 WL 5920148 (E.D. Cal. Nov. 13, 2018)...................... 12

*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022)............................................................................. 11

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011)........................................................................... 13

**STATUTES**

2 U.S.C. § 1 ....................................................................................................... 2

2 U.S.C. § 7 ....................................................................................................... 2

3 U.S.C. § 1 ....................................................................................................... 2

10 Ill. Comp. Stat. § 5/19-8(c) ......................................................................... 5

25 Pa. C.S. § 3146.8 .......................................................................................... 5

Cal Elec. Code § 3020....................................................................................... 7

Cal. Elec. Code § 3003 ...................................................................................... 4

Cal. Elec. Code § 3020 ....................................................................... 1, 5, 14, 17

D.C. Code 1.1001.05........................................................................................ 5

Kan. Stat. 25.1132............................................................................................. 5

Mass. Gen. Laws 54.93 ..................................................................................... 5

Md.  Code Elec. Law § 9-309 ........................................................................... 5

N.D. Cent. Code 16.1.07.09.............................................................................. 5

N.J. Stat. § 19:63-22.......................................................................................... 5

N.Y. Elec. Law § 8-412 .................................................................................... 5

v

Nev. Rev. Stat. 293.269921 ................................................................ 5

Ohio Rev. Code 3509.05 ..................................................................... 5

Or. Rev. Stat. 253.070 ........................................................................ 5

P.R. Code Ann. tit. 16, § 4735 ........................................................... 5

Tex. Elec. Code § 86.007 .................................................................... 5

Utah Code § 20A-3a-204 .................................................................... 5

V.I. Code tit. 18, § 665 ........................................................................ 5

Va. Code 24.2.709 .............................................................................. 5

W. Va. Code 3.5 ................................................................................. 5

Wash. Rev. Code 29A.40.091 ............................................................ 5

**FEDERAL RULES**

Fed. R. Civ. P. 24 .......................................................................*passim*

**OTHER AUTHORITIES**

7C Charles Alan Wright & Arthur R. Miller,
    Fed. Prac. & Proc. Civ. § 1909 (3d ed.) ...................................... 18, 20

Associated Press, *USPS agrees to work with DOGE on reform,*
    *planning to cut 10,000 workers*, (Mar. 14, 2025),
    https://apnews.com/article/us-postal-service-doge-agreement-daf3bf54fa07189
    08791fcb368b4d9d8 ............................................................................. 2

Cal. Sec'y of State, Historical Vote-By-Mail (Absentee) Ballot Use in California,
    https://www.sos.ca.gov/elections/historical-absentee ............................... 5

Cal. Sec'y of State, Vote-By-Mail Ballot Rejection Reason Reports
– Statewide Elections (2024), https://admin.cdn.sos.ca.gov/elections/statewide-elections/2024-general/november-general-2024.pdf ................................. 1

Letter from Na'l Ass'n of Sec'ys of State to Postmaster Gen. (Sept. 11, 2024),
https://www.nass.org/sites/default/files/NASS%20Letters/9.11.24%20NASS_NASED%20Letter%20to%20US%20Postmaster%20DeJoy.pdf ......................... 6

Md. State Bd. of Elections, "Canvassing,"
https://perma.cc/RZ8M-W6JK .................................................................. 5

Nat'l Conf. of State Legs., *Tbl. 11: Receipt & Postmark Deadlines
for Absentee/Mail Ballots* (updated March 24, 2025), https://www.ncsl.org/elections-and-campaigns/table-11-receipt-and-postmark-deadlines-for-absentee-mail-ballots ............................................................................................ 5

Suzanne Potter, *Postal Workers Speak out about Short Staffing, Mail Delays*, Pub.
News Serv. (Feb. 9, 2024), https://www.publicnewsservice.org/2024-02-09/livable-wages-working-families/postal-workers-speak-out-about-short-staffing-mail-delays/ ............................................................................................... 2

U.S. Postal Serv., "Quarterly Performance for Single-Piece First-Class Mail,"
(FY2025, Q1), https://about.usps.com/what/performance/service-performance/fy2025-q1-single-piece-first-class-mail-quarterly-performance.pdf ................... 15

Pursuant to Rule 24(a), Vet Voice Foundation ("Vet Voice") and the California Alliance for Retired Americans ("CARA") (together, "Proposed Intervenors") move to intervene as a matter of right. Alternatively, the Proposed Intervenors move to intervene permissively under Rule 24(b). Their motion should be granted for the reasons below.

## INTRODUCTION[1]

In the 2024 general election, nearly 10 million Californians—*over 80%* of the voters who participated—cast their ballots by mail.[2] In accordance with California law, those ballots were counted so long as they were postmarked on or before election day and received no later than seven days after. Cal. Elec. Code § 3020 (the "Ballot Receipt Deadline"). Nearly two dozen other states and U.S. territories have similar laws on the books—many of which have been in place for decades. These laws are commonsense measures that protect lawful, qualified voters from disenfranchisement due to mail delays that are both increasingly common and often entirely out of the voters' control. These types of ballot receipt deadlines are particularly critical in states like California, where the vast majority of voters cast their ballots by mail. Indeed, granting the relief that Plaintiff Congressman Darrell Issa seeks here and requiring California to reject all mail ballots received after election day—regardless of whether they were cast on or well before that day—would likely require a wholesale revamping of California's election system to ensure that voters across the state would have free and fair access to the franchise.

In states without similar deadlines, qualified voters who timely complete and cast their ballots are routinely disenfranchised. Most at risk are voters who must rely on mail voting to vote, including many active and former members of the Armed Services and their

---

[1] Prior to filing this motion, counsel for Vet Voice and CARA conferred with counsel for both Plaintiff and Defendant. Plaintiff objects to the motion, and Defendant takes no position on the motion.

[2] *See* Cal. Sec'y of State, *Vote-By-Mail Ballot Rejection Reason Reports – Statewide Elections* (2024), https://admin.cdn.sos.ca.gov/elections/statewide-elections/2024-general/november-general-2024.pdf.

1

families, disabled voters, and voters who are 65 years old or older—precisely the voters who Proposed Intervenors Vet Voice and CARA represent and work to enfranchise as part of their core organizational missions. While these voters have always been particularly vulnerable to disenfranchisement due to mail delays, that risk is only becoming more acute. With growing stresses on the U.S. Postal Service, staffing shortages, and increased and often unpredictable mail delays, voters face a lack of both certainty and control over how quickly their mailed ballots are returned to election officials.[3] What's more, the USPS just announced tens of thousands of staff cuts and billions of dollars in funding cuts—which will only exacerbate delivery delays in future elections.[4]

After a decade of California counting mail ballots received after election day without issue, Congressman Issa filed this lawsuit seeking to use the judiciary to force California to reverse this sensible policy decision. He claims that the Ballot Receipt Deadline is preempted by the federal election day statutes, 2 U.S.C. §§ 1, 7 and 3 U.S.C. § 1, and violates his constitutional right to vote and stand for office, and seeks an order forbidding Defendant, the California Secretary of State, from counting *any* mail ballots received after election day, even if postmarked on or before. *See* Compl. ¶¶ 10, 33–66, Prayer for Relief, ECF No. 1. Not only would the results be devastating to California voters, Congressman Issa's legal theories have been tried again and again in federal courts across the country and repeatedly rejected.[5] In the solitary opinion to endorse Congressman Issa's position,

---

[3] *See* Suzanne Potter, *Postal Workers Speak out about Short Staffing, Mail Delays*, Pub. News Serv. (Feb. 9, 2024), https://www.publicnewsservice.org/2024-02-09/livable-wages-working-families/postal-workers-speak-out-about-short-staffing-mail-delays/a88788-1.

[4] Associated Press, *USPS agrees to work with DOGE on reform, planning to cut 10,000 workers*, (Mar. 14, 2025), https://apnews.com/article/us-postal-service-doge-agreement-daf3bf54fa0718908791fcb368b4d9d8#:~:text=WASHINGTON%20(AP)%20%E2%80%94%20Postmaster%20General,members%20of%20Congress%20on%20Thursday.

[5] *See, e.g.*, *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *Bost*

2

*Republican National Committee v. Wetzel*, 120 F.4th 200 (5th Cir. 2024), the court reversed a careful, thoughtful opinion by the district court that—like all the other courts to consider the matter before it—thoroughly rejected the claim, in favor of rationale that ignored the facts and long-standing precedent interpreting the U.S. Constitution's Election Clause to read in an unspoken limitation on state power that has no grounding in text or history.

Given their unique interest in the matter, federal courts have granted Vet Voice and CARA's sister organizations, the Mississippi and Nevada chapters of the Alliance for Retired Americans, intervention in substantively identical federal lawsuits challenging those states' ballot receipt deadlines—including the case upon which Congressman Issa now relies. *See* Text Order, *Republican Nat'l Comm. v. Wetzel*, No. 1:24-cv-00025-LG-RPM (S.D. Miss. Mar. 4, 2024); Order, *Republican Nat'l Comm. v. Burgess*, No. 3:24-cv-00198-MMD-CLB (D. Nev. June 6, 2024), ECF No. 70. Here too, they should be granted intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissive intervention under Rule 24(b).

All the requirements for intervention as of right are met. *First*, the motion is timely: Congressman Issa filed this action a mere three weeks ago, and no substantive proceedings have occurred. *Second*, both Proposed Intervenors have an interest in the subject of the action and their ability to protect that interest will be impaired if Congressman Issa obtains the relief he seeks. Vet Voice's mission focuses on increasing turnout among veterans, active servicemembers, and military families, including in California. Laws like the one at issue here play a critical role in enfranchising those voters. *See, e.g.*, *Splonskowski v. White*, No. 1:23-CV-00123, 2024 WL 402629, at *4 n.3 (D.N.D. Feb. 2, 2024) (in dismissing

---

*v. Ill. State Bd. of Elections*, No. 22-CV-02754, 2023 WL 4817073 (N.D. Ill. July 26, 2023); *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 644 (7th Cir. 2024)*; Splonskowski v. White*, No. 1:23-CV-00123, 2024 WL 402629, at *4 (D.N.D. Feb. 2, 2024); *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 366 (D.N.J. 2020); *see also Donald J. Trump for President, Inc. v. Way*, No. 20-10753 (MAS) (ZNQ), 2020 WL 6204477, at *11 (D.N.J. Oct. 22, 2020).

3

similar challenge, observing that plaintiffs' requested relief—the same sought here—is likely to "impinge upon the voting rights of members of the United States military"); *see also* Br. for U.S. as Am. Curiae at 6, *Bost v. Ill. State Bd. Of Elections*, No. 23-2644 (7th Cir. Dec. 12, 2023), ECF No. 21 (explaining that late "ballot receipt deadlines . . . protect military and overseas voters' right to vote") ("Br. for U.S. As Am. Curiae"). Furthermore, many of Vet Voice's constituents are veterans who contend with service-related disabilities that may cause them to struggle to access in-person voting and rely on mail voting as a result. The same is true of CARA whose membership is made up of retirees, many of whom face challenges in getting to the polls to vote in person. *Finally*, neither organization's interests are adequately represented in this suit. Congressman Issa actively seeks to undermine those interests, and Defendant Weber does not have the same focus on protecting the rights of the specific voter populations Vet Voice and CARA serve.

The motion to intervene should be granted.[6]

## BACKGROUND

### I.  California's mail voting laws.

In California, mail ballots are available to "any registered voter." Cal. Elec. Code § 3003. Over the years, voters in California have become increasingly reliant on voting by mail to participate in the franchise. In 2000, around 25% of all ballots cast in the general election, about 2.7 million votes, came from mail ballots. In 2010, that figure grew to almost 50%, or 5 million votes, and in every statewide election since 2020, including a special statewide election in 2021, the mid-term general election in 2022, and the presidential general election in 2024, more than 80% of Californians—around 10 million

---

[6] In compliance with Rule 24(c), Vet Voice and CARA accompany this motion with a proposed a proposed Answer. *See* Ex. 4. If granted intervention, Vet Voice and CARA reserve their rights as Defendants to move to dismiss Congressman Issa's complaint prior to filing their Answer.

people—voted by mail.[7]

Under existing state law, a mail ballot received on or before election day is timely cast. *Id.* § 3020. In addition, a mail ballot is "timely cast if it is received by the voter's elections official via the United States Postal Service or a bona fide private mail delivery company no later than seven days after election day" and contains one of two marks identifying when the ballot was sent: either (1) a postmark by USPS or stamp by a private mail delivery service on or before election day, or (2) if there is no valid postmark and there is no other information from the delivery service indicating when the ballot was mailed, a date stamp by election officials upon receipt of the ballot as well as the voter's signature and a date on the ballot on or before election day. *Id*. § 3020(b).

Before 2014, California required mail ballots to be received by election day. That year, the State Assembly changed the receipt deadline to three days after election day. *See* 2014 Cal. Legis. Serv. Ch. 618 (S.B. 29). During the COVID-19 pandemic, the State Assembly allowed for mail ballots cast in the 2020 general election to be counted if received within 17 days of election day. *See* 2020 Cal. Legis. Serv. Ch. 4 (A.B. 860). In 2021, the State Assembly made it the default rule that ballots would count if received seven days after election day—the current Ballot Receipt Deadline. 2021 Cal. Legis. Serv. Ch. 312 (A.B. 37). Through all of these points in time, mail ballots would only count if they were postmarked or otherwise stamped as having been sent on or before election day. The existing Ballot Receipt Deadline has now been in place for both the 2022 and 2024 election cycles in California.

California is one of nearly two-dozen U.S. states and territories that have similar laws that allow ballots *cast* on or before election day to be *received* after election day.[8] As

---

[7] Cal. Sec'y of State Shirley N. Weber, *Historical Vote-By-Mail (Absentee) Ballot Use in California*, https://www.sos.ca.gov/elections/historical-absentee (last accessed Apr. 4, 2025).

[8] *See* Nat'l Conf. of State Legs., *Tbl. 11: Receipt & Postmark Deadlines for Absentee/Mail*

the U.S. Department of Justice has repeatedly noted, these types of laws are particularly important to guard against the systemic disenfranchisement of military voters and their families who, due to obstacles such as long mail transit times, have historically voted at significantly lower rates than the national population. *See* Br. for U.S. as Am. Curiae at 23-28 (discussing challenges faced by military and overseas voters and the importance of extended ballot receipt deadlines to such voters); Statement of Interest of the United States at 1, 10–15, *Splonskowski v. White*, No. 1:23-cv-00123-DMT-CRH (D.N.D. Sept. 11, 2023), ECF No. 19 (explaining such laws "can be vital in ensuring that military and overseas voters are able to exercise their right to vote"); Ex. 2, Decl. of Janessa Goldbeck ("Goldbeck Decl.") ¶¶ 10–12.

These laws have only become more essential as election officials across the country have sounded the alarm about "serious" problems with USPS processing facility operations, lost or delayed election mail, and front-line training deficiencies that risk impacting the USPS's ability to deliver election mail on time.[9] And in a state like California, where the entire elections apparatus is now premised on the assumption that voters will continue to cast their ballots primarily by mail, eliminating the seven-day grace period would all but guarantee the disenfranchisement of tens of thousands and maybe even

---

*Ballots* (last updated March 24, 2025), https://www.ncsl.org/elections-and-campaigns/table-11-receipt-and-postmark-deadlines-for-absentee-mail-ballots; Alaska Stat. § 15.20.081(e), (h); 10 Ill. Comp. Stat. § 5/19-8(c); Kan. Stat. § 25-1132; Md. Code, Elec. Law § 9-309; Md. State Bd. of Elections, "Canvassing," https://perma.cc/RZ8M-W6JK (last visited April 4, 2025); Mass. Gen. Laws ch. 54, § 93; Nev. Rev. Stat. § 293.269921; N.J. Stat. § 19:63-22; N.Y. Elec. Law § 8-412; N.D. Cent. Code §§ 16.1-07-09, 16.1-15-25; Ohio Rev. Code § 3509.05; Or. Rev. Stat. § 253.070; Tex. Elec. Code § 86.007; Utah Code § 20A-3a-204; Va. Code § 24.2-709; Wash. Rev. Code § 29A.40.091; W. Va. Code §§ 3-3-5, 3-5-17; D.C. Code § 1-1001.05(a)(10A); 25 Pa. C.S. § 3146.8; P.R. Code Ann. tit. 16, § 4735; V.I. Code tit. 18, § 665.

[9] Letter from Na'l Ass'n of Sec'ys of State to Postmaster Gen. (Sept. 11, 2024), https://www.nass.org/sites/default/files/NASS%20Letters/9.11.24%20NASS_NASED%20Letter%20to%20US%20Postmaster%20DeJoy.pdf.

hundreds of thousands of lawful, qualified voters.

Nevertheless, on March 13, 2025, Congressman Issa filed this litigation, in which he argues that California's Ballot Receipt Deadline violates federal law and his constitutional right to run for office and asks this Court to enjoin it and require California election officials to toss out all ballots received after election day, even if postmarked on or before that day. *See* Compl. at 9–10 (Prayer for Relief seeking to enjoin Cal Elec. Code § 3020).

## II. Proposed Intervenor-Defendants.

***Vet Voice***. Vet Voice is a national non-profit, non-partisan organization dedicated to empowering veterans across the country to become civic leaders and policy advocates. *See* Goldbeck Decl. ¶¶ 3, 5. It has over 1.5 million subscribers who receive Vet Voice communications, including thousands here in California. *Id.* ¶ 4. Beyond those who affirmatively subscribe to its communications, Vet Voice's constituency includes active servicemembers, including those deployed away from home, as well as military veterans, many of whom are over the age of 65 or have physical disabilities (oftentimes attributable to their time in service). *Id.* ¶¶ 8–9. Increasing voter turnout among military and veteran voters, as well as their families, is critical to Vet Voice's mission. *Id.* ¶ 5. Furthermore, Vet Voice believes that turning out the "veteran vote" benefits all Americans by engaging people who have served their country in the civic process, and aims to promote turnout among all veterans, regardless of their political beliefs. *Id.* ¶¶ 5–6, 13.

Military voters and veterans often face challenges in exercising their right to vote. Active-duty servicemembers and their families are frequently deployed away from home, making it physically impossible for them to appear in person at their local polling sites on election day and making them entirely reliant on mail voting to exercise the franchise. *Id.* ¶ 8. Vet Voice's CEO, Janessa Goldbeck, has firsthand knowledge of these challenges. During her seven years in the U.S. Marine Corps, she personally relied on mail voting to cast her ballot on several occasions, including in 2012 when she was not able to leave officer training school at Marine Corps Base Quantico. *Id.* ¶¶ 7, 11. Veteran voters also

7

often face obstacles to voting in person, either due to age or disabilities caused by military service. *Id.* ¶¶ 8–9. These voters similarly depend heavily on mail voting. *Id.*

Vet Voice dedicates significant resources, including money, personnel time, and volunteer effort, to improving military and veteran voter turnout rates. *Id.* ¶ 14. Roughly three-quarters of America's 1.4 million active servicemembers are eligible to vote by mail, including many members from California. *Id.* ¶ 8. Active servicemembers vote at significantly lower rates than the national population. *Id.* ¶ 10. To combat this issue, Vet Voice has developed a first-of-its kind military voter file containing approximately 32 million records of veterans and military family members, including records for thousands of voters in California. *Id.* ¶ 6. Vet Voice uses its voter file to directly reach out to military voters, often through veteran-to-veteran communications. *Id.* ¶ 15. In the 2020 general election, Vet Voice sent over 2.5 million texts to 1.5 million military voters, and in 2024, Vet Voice sent 600,000 veterans and military-affiliated voters texts nationwide to encourage voting participation. *Id.* In each election, Vet Voice saw a substantial increase in turnout among the voters they contacted as compared to non-contacted voters. *Id*. On top of this, Vet Voice also engages in more traditional forms of voter engagement, including direct mailers, phone banking, rural radio advertising, and digital advertising. *Id.* ¶ 17. Given the importance of mail voting to Vet Voice's constituencies, these contacts often focus on educating military voters about how to vote by mail, including by providing information about eligibility requirements, application deadlines, and deadlines for submitting ballots. *Id.* ¶ 19.

Vet Voice is extremely concerned that Congressman Issa's challenge, if successful, will make it harder for its supporters and constituents—active-duty servicemembers, veterans, and their families—to successfully cast a mail ballot in California. *Id.* ¶ 20. Mail voters—and in particular active-duty servicemembers deployed overseas, in combat zones, or on ships and submarines—lack control over the mail, which is oftentimes unreliable for deployed members. *Id.* ¶¶ 12, 21. In addition to threatening Vet Voice's supporters and

constituents, Congressman Issa's challenge also frustrates Vet Voice's effort to realize its mission. To effectively plan voter engagement and mobilization efforts in California ahead of the 2025 municipal elections and 2026 general election, Vet Voice must understand the relevant legal landscape before preparing its voter education efforts. *Id.* ¶ 19. This lawsuit, however, hinders those engagement and mobilization efforts because it seeks to wholly rewrite the state's laws around mail voting, which in turn makes it more difficult for the organization to properly educate voters about the law and how to avoid issues that could lead to ballots being thrown out. *Id.* ¶ 20. Vet Voice thus seeks to intervene in this case to protect the voting rights of its supporters and constituencies, settle the legal landscape for its voter education efforts ahead of upcoming elections, and protect its own significant expenditure of resources in promoting mail voting. *Id.* ¶¶ 19–22.

Because of Vet Voice's unique and important interests in maintaining ballot receipt deadlines so its constituents can successfully vote, Vet Voice has previously intervened to defend against challenges to Nevada and Mississippi's ballot receipt deadlines that raised nearly identical theories as those asserted by Congressman Issa here. *Id.* ¶ 22; *see Republican National Committee v. Wetzel*, No. 1:24-cv-00025-LG-RPM (S.D. Miss. 2024); *Republican National Committee v. Burgess*, No. 3:24-cv-00198 (D. Nev. 2024).

**<u>*CARA*</u>**. CARA is the California chapter of the national Alliance for Retired Americans, a non-profit and non-partisan organization that has millions of members across the country. *See* Ex. 3, Decl. of Rob England ("England Decl.") ¶¶ 3–4. CARA has 900 members who pay dues directly to the organization, as well as a total of 950,000 members who it represents through formal affiliations with other organizations, including labor unions. *Id.* ¶ 4. Under these agreements, affiliated members are considered full members of CARA. *Id.* CARA's membership is overwhelmingly comprised of senior retirees, and its mission is to ensure that its members, and all retirees, enjoy their retirement after a lifetime of work. *Id.* ¶¶ 5–6. To that end, its efforts are often focused on issues of particular concern to retirees, including Medicare and Medicaid, Social Security, and the cost of

medicine. *Id.* ¶ 5.

Ensuring access to the franchise is a critical piece of CARA's mission, and accordingly it dedicates significant effort to voter registration and voter education. *Id.* ¶ 11. CARA, its members, and other volunteers register and educate voters, including by sponsoring and facilitating programs and campaigns to encourage members and constituents to vote and ensure their vote will be counted. *Id.* CARA also runs a senior vote program focused on outreach to older voters through postcards and other forms of communication to educate these voters about how to cast their ballots. *Id.* Through this program, volunteers provide voters with information on how to return their mail ballots. *Id.* This program requires significant dedication of resources from CARA's already limited budgetary resources and members' time. *Id.* CARA's members and volunteers also educate family, friends, and neighbors about registering to vote. *Id.* ¶ 12. And they oftentimes assist friends or family members in completing mail ballots, due to their familiarity with California voting rules. *Id.*

CARA's members are themselves highly reliant on mail voting. *Id.* ¶ 6. Rob England, the Executive Director of CARA, estimates that approximately 75% of the group's membership votes by mail. *Id.* ¶ 7. These members must vote by mail for many reasons, including because of their age and other physical conditions, lack of transportation, and inability to stand in lines at polling places. *Id.* ¶ 6.

If Congressman Issa's suit is successful, CARA's members will face a heightened risk of having their mail ballots rejected. *Id.* ¶¶ 8–10, 14. Like Vet Voice, CARA is extremely concerned about the impact such an outcome would have on its members and constituents who depend on mail voting because of inaccessibility to in-person voting due to age, mobility problems, and health issues. *Id.* ¶ 14. CARA therefore seeks to intervene in this case to protect its members' rights to cast mail ballots under California law, as well as their right to vote generally. *Id.* ¶¶ 14, 17. It also seeks to protect its own resources and mission, including its existing voter education efforts and activities that ensure older

Americans have access to social security, Medicare, and affordable medicines. *Id.* ¶¶ 15–16. If the ballot receipt deadline is now seven days earlier, CARA will have to change the timing of all of its programing so that it is able to engage voters early enough to get them the information they need to vote. *Id.* ¶ 15. CARA's senior vote program will also have to spend additional time and resources planning how to change its communication plan with voters to best advise them of how to vote and return their ballot with sufficient buffer time in advance of election day. *Id.*

Because of the importance of ballot receipt deadlines to the Alliance for Retired Americans' members and constituency nationwide, federal courts granted the Nevada and Mississippi sister chapters of CARA motions to intervene to defend against challenges to those states' ballot receipt deadlines. *Id.* ¶ 18; *see generally Wetzel*, No. 1:24-cv-00025-LG-RPM; *Burgess*, No. 3:24-cv-00198. These efforts reflect Proposed Intervenors' commitment to ensuring that any qualified voter can access the franchise through fair voting rules, especially rules for voting by mail. England Decl. ¶ 18.

## ARGUMENT

## I.    Vet Voice and CARA are entitled to intervene as of right under Rule 24(a).

Rule 24(a)(2) permits a party to intervene as a matter of right if the following four elements are met: the intervening party "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020)); *see also* Fed. R. Civ. P. 24(a)(2). The Ninth Circuit has adopted a policy of "interpret[ing] these requirements broadly in favor of intervention." *Id.* (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)). And "[i]n addition to mandating broad construction, [] review is guided primarily by practical considerations, not technical distinctions." *Id.* Vet Voice and CARA readily meet

the requirements of Rule 24(a)(2). They should accordingly be granted intervention as of right.

### A.    The motion is timely.

The motion to intervene is clearly timely. Congressman Issa filed his Complaint on March 13, 2025. On March 28, 2025, this Court granted the parties' joint motion to extend the deadline for responsive pleadings until May 19, 2025. This motion follows a week later, before any substantive activity in the case.

In determining whether a motion to intervene is "timely," courts in this Circuit consider the stage of the proceeding at which an applicant seeks to intervene, prejudice to other parties, and the reason for and length of any delay. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). All three considerations support a finding of timeliness here.

Proposed Intervenors have moved to intervene just a few weeks after the Complaint was filed—at the "outset of the litigation," when timeliness is plain. *See Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993). Secretary Weber's response to the complaint is not due until May 19—over six weeks from the filing of this motion. *See* ECF No. 5. One other party has moved to intervene as a defendant in this case, but no responses from the existing parties have been filed, and the motion is set for hearing on the same date as this motion in mid-May. No other deadlines exist as of now and, if granted intervention, Proposed Intervenors will abide by any schedule adopted by the Court. Thus, granting Vet Voice and CARA intervention poses no possible prejudice to the other parties. *See W. States Trucking Ass'n v. Schoorl*, No. 2:18-CV-1989, 2018 WL 5920148, at *1 (E.D. Cal. Nov. 13, 2018) (finding no prejudice where party "sought to intervene [at] the very outset of litigation"). Proposed Intervenors accordingly satisfy Rule 24's timeliness requirement.

**B.    The disposition of this case will impair Vet Voice's and CARA's significant interest in promoting and protecting their members' and constituents' voting rights.**

Vet Voice and CARA also satisfy the second and third requirements for intervention because they have significant protectable interests in this lawsuit, and the action threatens to impair their ability to protect those interests. Under Rule 24(a)(2), "[w]hether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry," and "[n]o specific legal or equitable interest need be established." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)); *see also Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (intervenors "need not establish Article III standing to intervene"). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (cleaned up). As such, applicants need not show that impairment is a "certainty," only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use*, 647 F.3d at 900 (quoting Fed. R. Civ. P. 24(a)(2)). Once an applicant has shown some protectible interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" an intervenor's interests. *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). Furthermore, "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (quoting 6 James W. Moore, *et al., Moore's Federal Practice* § 24.03[2][c] (3d ed. 2008)).

Vet Voice and CARA easily satisfy these requirements. Congressman Issa's challenge to California's Ballot Receipt Deadline seeks to restrict the ability of Vet Voice's and CARA's members, supporters, and constituents to successfully cast a mail ballot in

13

1   California's elections. *See* Compl. at 9–10 (seeking to enjoin Cal. Elec. Code § 3020). Both

2   Vet Voice and CARA serve communities that rely heavily on mail ballots to vote. Vet

3   Voice, for example, spends significant resources to promote voting among veterans, active

4   service members, and military family members. Goldbeck Decl. ¶ 14. Because active

5   service members and their families are often stationed away from their homes, they depend

6   on mail voting to participate in elections. *Id.* ¶ 18. Similarly, many veterans in California

7   rely on mail voting as well, *id.* ¶ 9, often because of age or physical disability (often caused

8   by military service). Vet Voice's military voter file includes thousands of California

9   servicemembers, veterans, and military family members who are eligible to vote by mail,

10  *id.* ¶ 7, along with thousands of subscribers in the state whom the group seeks to mobilize

11  in furtherance of its mission, *id.* ¶ 5. Vet Voice's mission is to ensure each of these people

12  has full access to the ballot box and that military voters are heard at the polls. *Id.* ¶¶ 6–7.

13       Similarly, CARA has many members in California who must vote by mail due to the

14  greater obstacles they face voting in person, whether due to age or disability. England Decl.

15  ¶¶ 6, 10. In fact, roughly 75% of the group's members vote by mail because, among other

16  reasons, their age or physical disabilities limit their ability to vote in person. *Id.* ¶¶ 7, 10.

17  Other members lack transportation or are not able to stand in long lines at polling places.

18  *Id.* ¶ 10. If Congressman Issa succeeds, CARA's members will face heightened risks of

19  having their ballots rejected. *Id.* ¶¶ 10, 14. Like Vet Voice, ensuring access to the ballot is

20  a critical piece of CARA's mission. *Id.* ¶ 7.

21       Congressman Issa expressly seeks a federal judicial order that would prohibit

22  California from counting any mail ballots that are received after election day, even if they

23  were timely cast—as evidenced by a postmark on or before election day—and even where

24  events outside of the voter's control delay arrival of their ballots. If successful, this suit

25  will directly threaten the voting rights of the communities Vet Voice and CARA serve, as

26  well as CARA's individual members. *Id.* ¶¶ 20–22; England Decl. ¶¶ 6–10. And the risk

27  of disenfranchisement for the voters Vet Voice and CARA represent is only increasing as

28                                      14

USPS delivery performance degrades. Indeed, USPS itself recently reported that only about 80% of first-class mail is delivered on-time.[10] Accordingly, Proposed Intervenors have an important protectable interest that they may assert on behalf of their members, supporters, and constituents where, as here, litigation threatens to burden their constitutional right to vote. *See generally Mi Familia Vota v. Fontes*, 129 F.4th 691, 709 (9th Cir. 2025); *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 821 (reversing denial of intervention and concluding a threatened injury to their members was sufficient). Vet Voice and CARA likewise, as organizations, have important interests in protecting their members', supporters', and constituents' ability to vote by mail.

Proposed Intervenors also have additional significant protectable interests in this lawsuit independent from their members and constituents because the relief Congressman Issa seeks will impact how Vet Voice and CARA allocate their resources, including financial resources and volunteer and staff time, as they prepare to educate and turn out their members and constituents for the 2025 municipal elections and 2026 general elections. *Cf. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) ("[A]n organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose."); *Mi Familia Vota*, 129 F.4th at 709 (concluding organization representing naturalized citizens had standing to challenge lawsuit that would threaten the voting rights of the public and the organization's members). Both Vet Voice and CARA are in the process of preparing their voter engagement and get-out-the-vote campaigns for upcoming elections, and plan to devote significant resources to encourage their members and supporters in California to apply for mail ballots, and to assist them in successfully casting those ballots. Goldbeck Decl. ¶ 19; England Decl. ¶¶ 11–12.

---

[10] U.S. Postal Serv., "Quarterly Performance for Single-Piece First-Class Mail," (FY2025, Q1), https://about.usps.com/what/performance/service-performance/fy2025-q1-single-piece-first-class-mail-quarterly-performance.pdf.

These kinds of interests are "routinely found to constitute significant protectable interests" for purposes of intervention. *Issa v. Newsom*, No. 20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention as a matter of right). Indeed, another state chapter of the Alliance for Retired Americans was granted intervention as of right precisely because "protecting their own constituents' voting rights" is a "significant protectable" interest under Rule 24. *1789 Found. Inc., v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *3 (D. Ariz. Mar. 17, 2025). Congressman Issa's suit seeks to rewrite the deadline for mail ballots, meaning Vet Voice and CARA "would have to devote their limited resources to educating their members on California's [altered] voting-by-mail system." *Id.*; *see* Goldbeck Decl. ¶¶ 19–22; England Decl. ¶¶ 15–16. They seek to intervene in this case, in part, to avoid the disruption that Congressman Issa's requested relief would cause to their voter education and engagement plans for the upcoming elections, as well as other organizational priorities like educating retirees about policies affecting Medicare and Medicaid, Social Security, and the cost of medicine, England Decl. ¶ 16, and empowering veterans to become advocates about policy issues they will face at home such as the environment, health care, and employment, Goldbeck Decl. ¶ 6. *See County of San Miguel v. MacDonald*, 244 F.R.D. 36, 47 (D.D.C. 2007) (granting intervention where plaintiffs' requested relief would require "the expenditure of additional time and resources" by intervenors and their members (internal citation omitted)); *cf. Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law required organization "to retool [its] [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc).

Vet Voice and CARA's ability to protect their interests, as well as the interests of their members and constituents, will be significantly impaired if they are not permitted to intervene. Congressman Issa does not seek relief impacting himself alone. Rather, he seeks injunctive and declaratory relief that, if granted, will determine the rules for the millions of

Californians who vote by mail. Many of Vet Voice's and CARA's members and constituents plan to vote by mail in the 2025 municipal elections and 2026 general election, and both organizations are currently preparing their voter outreach and get-out-the-vote strategies for that election in California. Goldbeck Decl. ¶¶ 16, 19; England Decl. ¶¶ 7, 15. This case will likely set the rules of the road for those efforts, and Vet Voice, CARA, and the communities they serve in California will have no other opportunity to prevent Congressman Issa's unilateral attempt to rewrite state election law. Simply put, the law Congressman Issa seeks to overturn—Cal. Elec. Code § 3020—"grants rights to [the Proposed Intervenors] and their members that could be taken away if the plaintiffs prevail." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022) ("*LUPE*") (holding political committees "established that their interest may be impaired" where litigation impacted "election landscape"). Given the possibility of the direct alteration of their members' rights, Vet Voice and CARA have readily shown that Congressman Issa's claims, if successful, "may practically impair [their] ability to protect their interest in the subject matter of the litigation."*1789 Found. Inc.*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *2 (quoting *Citizens for Balanced Use*, 647 F.3d at 900) (granting intervention as of right to Arizona Alliance for Retired Americans in a voting rights case).

### C.   Vet Voice's and CARA's interests are not adequately represented by the existing parties in this case.

Finally, Vet Voice and CARA will not be assured adequate representation in this matter if they are denied intervention. "[The] requirement . . . is satisfied if the applicant shows that representation of his interest '*may be*' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted) (emphasis added). This burden is minimal, *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983), and is "satisfied if the applicant shows that representation of its interests may be inadequate," *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal. 2022). Courts are typically "liberal in finding" this requirement is met

because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1909 (3d ed.). The Ninth Circuit has repeatedly stressed that the burden is minimal when reversing orders denying intervention. *See e.g.*, *Sw. Ctr. for Biological Diversity*, 268 F.3d at 819 (reversing denial of intervention because the "interests of government and the private sector may diverge"); *Citizens for Balanced Use*, 647 F.3d at 900 (reversing denial of intervention and emphasizing that intervention does not require "absolute certainty . . . that existing parties will not adequately represent its interests."). Vet Voice and CARA satisfy that requirement here.

The existing Defendant in this action, Secretary of State Weber, is a California public official. As such, she represents the broader public interest, and not the acute concerns that organizations like Vet Voice and CARA have in protecting mail voting for their members and specific constituencies. *See Trbovich*, 404 U.S. at 538–39 (observing government defendant had "an obligation to protect the vital public interest" in contrast to the "narrower interest" of a private party (cleaned up)).[11] Indeed, other state chapters of the Alliance for Retired Americans have been granted intervention as of right in federal cases where they similarly sought to protect their members voting rights and their organizational interests precisely because they uniquely represent "their organizational and associational interests in protecting the voting rights of their constituents." *1789 Found. Inc.*, 2025 WL 834919, at \*2; *see* Text Order, *Wetzel*, No. 1:24-cv-00025-LG-RPM (Mar. 4, 2024); *Burgess*, No. 3:24-cv-00198-MMD-CLB, ECF No. 70.

While the Secretary of State may oppose the relief Congressman Issa requests, it

---

[11] As to Congressman Issa, little needs to be said—he seeks to shorten the period of time in which a mail ballot may be received by election officials. Vet Voice and CARA strongly oppose that result.

does not follow that she will adequately represent Proposed Intervenors' interests.[12] Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use*, 647 F.3d at 899 ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))). Courts within this Circuit regularly reach the same conclusion in election cases. *See, e.g.*, *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445 JCM (VCF), 2020 WL 5229116, at *1 (D. Nev. Aug. 21, 2020) (granting intervention as of right because Secretary did not adequately represent organization's interests, despite both wishing to defend against suit); *Paher v. Cegavske*, No. 3:20-CV-00243-MMDWGC, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020) (similar, even where intervenors and named defendant "presumably share[ d] the goal of protecting the all-mail election provisions. . . being challenged"); *Issa*, 2020 WL 3074351, at *3 (granting intervention as of right even though "Defendants and the Proposed Intervenors fall on the same side of [mail voting] dispute").

The Supreme Court has recently emphasized that executive officials will not often be adequate representatives for partisan or private actors who seek to intervene under Rule 24. *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 194–97 (2022). In *Berger*, the Supreme Court reiterated its longstanding instruction that even when state agents pursue "related" interests to proposed intervenors, those interests are not properly

---

[12] There is also no reason to expect that Proposed Intervenor Curtis Morrison will adequately represent the interests of Vet Voice or CARA. *See* ECF No. 6. Morrison seeks to intervene to defend *his* particular interests as a voter and potential candidate. *Id.* at 6. This does not come close to encompassing or representing the interests of Vet Voice and CARA in protecting their members' voting rights, which face heightened risk of rejection for being received after election day.

considered "identical." *Id*. at 197 (quoting *Trbovich*, 404 U.S. at 538–39). The Court then explained that, "[w]here 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Id*. (quoting Wright & Miller, *supra*, § 1909). In particular, the Court stressed that whereas actors like the named Defendant must "bear in mind broader public-policy implications," *id*. at 196, proposed intervenors' sole interest—like Vet Voice and CARA here—rests in protecting the ability of their members and constituents to vote, Goldbeck Decl. ¶¶ 16–19; England Decl. ¶ 13. Vet Voice and CARA and the named Defendant thus do not "share the same ultimate objective." *Citizens for Balanced Use*, 647 F.3d at 898.

It is therefore immaterial that Vet Voice and CARA would "fall on the same side of the dispute" as the existing Defendant—which is always the case with intervention. *Issa*, 2020 WL 3074351, at *3 ("While Defendant['s] arguments turn on [its] inherent authority as [a] state executive[] and [her] responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their . . . members [and supporters] . . . have the opportunity to vote" by mail and in "allocating their limited resources to inform voters about the election procedures."); *cf. Democratic Party of Va. v. Brink*, No. 3:21-cv-756-HEH, 2022 WL 330183, at *2 (E.D. Va. Feb. 3, 2022) (observing that the "[state's] interests are to defend [the state's] voting laws no matter the political repercussions while [intervenor's] interest is to defend the voting laws when doing so would benefit" its supporters).

Moreover, Vet Voice and CARA will bring a different perspective to the litigation than the existing Defendant. Proposed Intervenors' missions include promoting access to mail voting in California to the maximum extent possible in order to enfranchise the communities they serve. Goldbeck Decl. ¶¶ 4–7, 19–20; England Decl. ¶ 5. In contrast, Defendant Weber—California's chief election officer, Compl. ¶ 24—has supported laws restricting mail voting. For example, in a prior challenge brought by CARA seeking to

overturn California's signature matching requirement—which disenfranchises tens of thousands of mail voters in each election—Defendant Weber defended the law despite its risk to CARA's members. *See generally Cal. All. for Retired Ams. v. Weber,* No. 24STCP02062 (Cal. Super. 2024); *see also e.g.*, Goldbeck Decl. ¶¶ 5–7; England Decl. ¶ 7. Accordingly, Vet Voice and CARA "may present arguments about the need to safeguard [Californians'] right to vote that are distinct from Defendants' arguments." *Paher*, 2020 WL 2042365, at *3.

Because these distinct perspectives and interests are sufficient to meet the minimal burden of demonstrating that the existing parties' representation of Vet Voice's and CARA's interests are inadequate, the final requirement of Rule 24(a)(2) is met. *See Trbovich*, 404 U.S. at 538 n.10 (emphasis added); *Sagebrush Rebellion Inc.*, 713 F.2d at 528.

## II.    Alternatively, Vet Voice and CARA should be granted permissive intervention under Rule 24(b).

Vet Voice and CARA also satisfy the requirements for permissive intervention. Rule 24(b) permits intervention upon timely application "'when an applicant's claim or defense and the main action have a question of law or fact in common.'" *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992) (quoting Fed. R. Civ. P. 24(b)(2)). In exercising their discretion to permit intervention, courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Courts routinely grant permissive intervention to voting rights and other advocacy organizations in actions involving burdens on voting rights. In fact, both Vet Voice and other state chapters of the Alliance for Retired Americans have been granted intervention in other states to defend substantively identical lawsuits challenging state ballot receipt deadlines. *See* Text Order, *Wetzel*, No. 1:24-cv-00025-LG-RPM (S.D. Miss. Mar. 4, 2024) (permitting Vet Voice and the Mississippi Alliance for Retired Americans to intervene to

21

defend Mississippi's ballot receipt deadline); Order, *Burgess*, No. 3:24-cv-00198-MMD-CLB (D. Nev. June 6, 2024), ECF No. 70 (permitting Vet Voice and the Nevada Alliance for Retired Americans to intervene to defend Mississippi's ballot receipt deadline). That history alone gives these Proposed Intervenors a unique perspective that is currently missing from this litigation: they are the only parties that have also participated in prior challenges to similar laws and can provide the Court with a unique perspective on that precedent. Moreover, granting their intervention here is consistent with the regular practice of federal courts that routinely recognize that organizations such as these bring a valuable perspective to cases that threaten to make it harder for such organizations' members and constituents to successfully vote. *See also, e.g.*, *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organization to intervene in an action brought to compel local election officials to purge the voter rolls of ineligible voters); *Kobach v. U.S. Election Assistance Comm'n*, No. 13-CV-4095-EFM-DJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (allowing voting rights, civil rights, and other advocacy organizations to intervene in an action brought to compel voter registration applications to submit proof-of-citizenship documents); *see also League of Women Voters of N.C. v. North Carolina*, No. 1:13CV660, 2014 WL 12770081, at *3 (M.D.N.C. Jan. 27, 2014) (permitting individual voters to intervene in action challenging a series of restrictions on voting). And other district courts have granted permissive intervention to organizations that, like Vet Voice and CARA, "engage in voter advocacy and education to increase voting participation in elections" in a case raising substantially similar legal questions about the meaning of the federal election day statutes. *Donald J. Trump for President, Inc. v. Murphy*, No. CV-20-10753 (MAS) (ZNQ), 2020 WL 6573382, at *2 (D.N.J. Sept. 23, 2020).

As discussed above, Congressman Issa's challenge to California law threatens significant harm to Vet Voice's and CARA's legally protected interests, and the motion to intervene is indisputably timely. Vet Voice and CARA raise arguments against

Congressman Issa's claims that are likely to share common questions of law and fact with the main action, including with respect to Congressman Issa's flawed standing theories and his widely rejected reading of federal law upon which he bases his entire suit. *See generally* Ex. 4, Proposed Intervenors Proposed Answer. Most importantly, intervention will result in neither prejudice nor undue delay. As shown by their prompt effort to intervene, Vet Voice and CARA have an interest in swift resolution of this action to ensure that their voters are able to cast a mail ballot and have that ballot counted.

## CONCLUSION

For the reasons stated above, Vet Voice and CARA respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

Dated: April 4, 2025                    Respectfully submitted,

                                        *s/ Max A. Schoening*
                                        Omar G. Qureshi** (CA 323493)
                                        Max A. Schoening (CA 324643)
                                        QURESHI LAW PC
                                        700 Flower Street, Suite 1000
                                        Los Angeles, CA 90017
                                        omar@qureshi.law
                                        max@qureshi.law
                                        T: (213) 786-3478

                                        Lalitha D. Madduri* (CA 301236)
                                        Jacob D. Shelly*** (D.C. 90010127)
                                        Tina Meng Morrison*** (D.C. 1741090)
                                        William K. Hancock*** (D.C. 90002204)
                                        ELIAS LAW GROUP LLP
                                        250 Massachusetts Ave. NW, Suite 400
                                        Washington, D.C. 20001
                                        lmadduri@elias.law
                                        jshelly@elias.law
                                        tmengmorrison@elias.law
                                        whancock@elias.law
                                        T: (202) 968-4652

                                        *Application for admission pending
                                        **Application for admission forthcoming
                                        ***Pro hac vice application forthcoming

                                        Counsel for Proposed-Intervenors Vet
                                        Voice Foundation and California
                                        Alliance for Retired Americans

24