1

2
ERIC LEE (SBN 327002)
ROBERT PATRICK STICHT (SBN 138586)
3
JUDICIAL WATCH, INC.
425 THIRD STREET SW, SUITE 800
WASHINGTON, D.C. 20024
4
TEL.: (202) 646-5172
FACS.: (202) 646-5199
5
EMAIL: ELEE@JUDICIALWATCH.ORG
EMAIL: RSTICHT@JUDICIALWATCH.ORG
6

7
*Attorneys for Plaintiff Darrell Issa*

8
IN THE UNITED STATES DISTRICT COURT

9
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11

12
**DARRELL ISSA,**

Plaintiff,

13

14
v.

15
**SHIRLEY N. WEBER, in her official
capacity as Secretary of
State of California,**

16

17
Defendant.

18

| | |
|---|---|
| 25-cv-00598-AGS-JLB | |
| **PLAINTIFF'S OPPOSITION TO MOTIONS TO INTERVENE** | |
| Dept. | 5C |
| Judge: | Hon. Andrew G. Schopler |
| Date: | May 16, 2025 |
| Time: | 2:00 P.M. |

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

I.    Federal Election Day and California's Receipt Deadline ................................. 2

II.   Motions to Intervene ........................................................................... 3

ARGUMENT ..................................................................................................... 4

I.    The Court Should Deny Movants' Request for Intervention as of Right .......... 4

    A.    Movants Have No Significantly Protectable Interest ............................... 5

    B.    Movants' Interest is Not Impaired By This Litigation ............................. 9

    C.    Secretary Weber Can Adequately Defend Movants' Interests ............... 11

        i.    Presumption of Adequacy Applies and Movants Have Shown No
            Evidence to Rebut the Presumption ................................................. 11

        ii.   Alternatively, Movants Have Not Demonstrated Inadequacy of
            Representation Under the Default Standard ..................................... 15

II.   The Court Should Deny Movants' Request for Permissive
    Intervention ..................................................................................... 18

CONCLUSION ................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                                **Page No.**

*1789 Found. Inc., v. Fontes*,
   2025 U.S. Dist. LEXIS 47745 (D. Ariz. Mar. 17, 2025) ................................ 7, 8

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ........................... 11, 12, 13, 14

*Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269 (D. Ariz. 2020) .............. 20

*Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022) ........................... 12

*Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525 (7th Cir. 1988) .............................. 20

*Bost v. Ill. State Bd. of Elections*, 75 F.4th 682 (7th Cir. 2023) ................. 16, 17, 19

*Burdick v. Takushi*, 504 U.S. 428 (1992) ................................................................... 7

*Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984) ................................................. 19, 20

*Cajun Elec. Power Co-op., Inc. v. Gulf States Utilities, Inc.*,
   940 F.2d 117 (5th Cir. 1991) ............................................................................... 16

*Cal. All. for Retired Ams. v. Weber*, No. 24STCP02062 (Cal. Super. 2024) .......... 17

*California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775 (9th Cir. 1986) ........... 11

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
   42 F.4th 1013 (9th Cir. 2022) ...................................................................... 12, 17

*City of Emeryville v. Robinson*, 621 F.3d 1251 (9th Cir. 2010) ............................... 9

*Counsel of Ins. Agents & Brokers v. Molasky-Arman*,
   522 F.3d 925 (9th Cir. 2008) ................................................................................. 8

*Democratic Nat'l Comm. v. Wis. State Legis.*, 141 S. Ct. 28 (2020) ....................... 7

*Donald J. Trump for President, Inc. v. Bullock*,
   491 F. Supp. 3d 814 (D. Mont. 2020) ................................................................... 6

*Donald J. Trump for President, Inc. v. Cegavske*,
   2020 U.S. Dist. LEXIS 164119 (D. Nev. Aug. 21, 2020) ........................... 12, 13

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) .................................... 5, 10, 18

*FEC v. Ted Cruz for Senate*, 596 U.S. 289 (2022) ................................................... 8

*Fisher v. Arizona*, 594 Fed. App'x 917 (9th Cir. 2014) ........................................... 9

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003) ......................... 12

*Hawaii-Pacific Venture Capital Corp. v. Rothbard*,
   564 F.2d 1343 (9th Cir. 1977) ............................................................................. 10

*Issa v. Newsom*,
   2020 U.S. Dist. LEXIS 102013 (E.D. Cal. June 10, 2020) ........................ 7, 8, 20

*McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802 (1969) ...................... 7

*Mussi v. Fontes*, 2024 U.S. Dist. LEXIS 122651 (D. Ariz. July 12, 2024) ...... 13, 14

*Northwest Forest Resource Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ................................................................... 5, 8

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
   960 F.3d 603 (9th Cir. 2020) ................................................................. 15, 17

*Paher v. Cegavske*,
   2020 U.S. Dist. LEXIS 74095 (D. Nev. April 28, 2020) ........................... 12, 13

*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009) ................................................................. 4, 8, 20

*Pest Comm. v. Miller*, 648 F. Supp. 2d 1202 (D. Nev. 2009) ................................ 11

*Preminger v. Peake*, 552 F.3d 757 (9th Cir. 2008) ................................................... 8

*Prete v. v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) ........................................*passim*

*Republican Nat'l Comm. v. Wetzel*, 120 F.4th 200 (5th Cir. 2024) ..................... 2, 8

*Republican Party v. Degraffenreid*, 141 S. Ct. 732 (2021) ................................. 6-7

*Rosario v. Rockefeller*, 410 U.S. 752 (1973) ........................................................... 7

*Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) ........................... 15

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ..... 15

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) ......... 18, 19

*State ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) ...................... 9

*Stuart v. Huff,* 706 F.3d 345 (4th Cir. 2013) ........................................................ 13

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ............................. 15

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ................5, 9-10

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ...................... 10

*Valley View Health Care, Inc. v. Chapman*,
   2013 U.S. Dist. LEXIS 122112 (E.D. Cal. Aug. 27, 2013) ............................. 19

*Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183 (9th Cir. 2009) .................... 15

**Federal Statutes**

2 U.S.C. § 1 ................................................................................................ 2

2 U.S.C. § 7 ............................................................................................. 1, 2

3 U.S.C. § 1 ................................................................................................ 2

42 U.S.C. § 1983 ...................................................................................... 10

52 U.S.C. § 10301 .................................................................................... 10

**State Statutes**

Cal. Elec. Code § 3020 ..................................................................... 3, 6, 19

Cal. Elec. Code § 3123 ............................................................................. 10

Cal. Elec. Code § 15501 ............................................................................. 3

Cal. Elec. Code § 15503 ............................................................................. 3

Cal. Gov. Code § 12172.5 ........................................................................ 14

**Rules**

Fed. R. Civ. P. 24 .............................................................................*passim*

**Other**

7C Wright, Miller & Kane, § 1909 ......................................................... 11

Plaintiff Congressman Darrell Issa ("Plaintiff") submits this memorandum in opposition to the motions to intervene of Curtis Morrison (ECF No. 6), Vet Voice Foundation and the California Alliance for Retired Americans (ECF No. 7) ("CARA Movants"), and the League of Women Voters of California (ECF No. 8) ("LWV Movant") as intervenor defendants.

## INTRODUCTION

This action involves the pure legal question of whether California absentee and vote-by-mail ballots received up to seven days after federal Election Day are illegal under the applicable federal law. *See* 2 U.S.C. § 7. Plaintiff Congressman Darrell Issa alleged the California Receipt Deadline law is unlawful and preempted under the Elections Clause. He filed suit against Defendant Secretary of State Shirley N. Weber, who is the chief state election official for California and the official responsible for enforcing California election law. As election chief, Secretary Weber defends the interests of all voters, candidates, and public interest organizations in the state that seek to protect the right to vote or run for office in accordance with state law. Her office is represented by the California Attorney General, charged by law with defending the constitutionality of all state laws in California.

Three sets of intervenors, a newly-declared congressional candidate and three advocacy organizations, move to intervene as defendants under Fed. R. Civ. P. 24. They seek to defend California's law alongside the Secretary of State. With respect to their requests to intervene by right under Fed. R. Civ. P. 24(a), their motions fail because intervenors lack a protectable interest that will be impaired absent intervention and that interest is adequately represented by the Secretary of State under controlling law. Likewise, their motions for permissive intervention under Fed. R. Civ. P. 24(b) fails for similar reasons.

These proceedings involve pure legal questions. Movants' participation as parties, rather than *amici*, will very likely lead to duplicative motion practice on issues of law already raised by the existing parties, delaying the proceedings and

1

prejudicing the parties without any corresponding benefit to Movants' interest given the adequacy of representation.[1] For these reasons, the motions should be denied.

<strong>BACKGROUND</strong>

## I.    Federal Election Day and California's Receipt Deadline

Congress established the Tuesday after the first Monday in November of every even-numbered year as the uniform national election day in the United States ("Election Day"). The Election Day was first enacted as a uniform national day for the election in the United States in 1845 for presidential elections and then for congressional elections in 1872. *See* 2 U.S.C. § 7 (the "Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election" of congressional representatives); *see also id*. § 1 (senatorial elections); 3 U.S.C. § 1 (regarding appointment of electors). A survey of history before and contemporaneous to these enactments shows that the ordinary public meaning of Election Day at that time would have been understood by the public as the day by which all ballots must be received by state election officials. *See Republican Nat'l Comm. v. Wetzel*, 120 F.4th 200 (5th Cir. 2024), *reh'g en banc denied*, 2025 U.S. App. LEXIS 6080 (5th Cir. March 14, 2025).

Consistent with the Election Day statutes, California previously required all mail and absentee ballots ("VBM") to be received by state election officials on Election Day. That changed in 2015, when California's State Assembly amended its election code extending ballot receipt three days beyond Election Day. *See* 2014 Cal ALS 618; 2014 Cal SB 29; 2014 Cal Stats. ch. 618. 19. In 2021, the General Assembly further extended the deadline to seven days after Election Day. 2021 Cal ALS 312; 2021 Cal AB 37; 2021 Cal Stats. ch. 312. California law currently provides that election officials shall count VBM ballots that are received by election officials

---

[1] Plaintiff previously advised all Movants that he would not oppose any request to participate as *amici*, allowing them to brief *all* legal questions raised in these proceedings.

"no later than seven days after election day" so long as the ballot was mailed on or before election day or, if there is no postmark, signed and dated by the same date. Cal. Elec. Code § 3020 ("Receipt Deadline").

Plaintiff, who currently represents California's 48th Congressional District and is seeking reelection in 2026, filed suit alleging statutory and constitutional challenges to the Receipt Deadline. Plaintiff sued California's chief state election official who is responsible for certifying the results of California's elections. Cal. Elec. Code § 15503; *see* Cal. Elec. Code § 15501 (providing that the Secretary of State "shall prepare, certify, and file a statement of the vote from the compiled results" for Congressional elections). Secretary Weber's responsive pleading is currently due May 19, 2025. ECF No. 5.

## II.  Motions to Intervene

Three sets of intervenors have moved to intervene as of right or permissively as defendants alongside the Secretary of State to defend the constitutionality of the Receipt Deadline. The first is a self-declared Congressional candidate for California's 48th Congressional District, Mr. Curtis Morrison, who asserts a "right to be elected to Congress" and right to have "his own absentee ballot counted" as protectable interests for intervention and that this interest would be impaired should Plaintiff succeed in the outcome of the litigation. (ECF 6-1 at 10-11) (hereinafter "Morrison Br."). Mr. Morrison argues the Secretary Weber cannot represent his interests as a candidate since she is not a voter or candidate in the 48th Congressional District, may not address *all* the allegations in Congressman Issa's complaint, and because he will offer alternative arguments that Secretary Weber may not make. Morrison Br. at 8-9. Alternatively, Mr. Morrison requests to intervene permissively to protect his interests as a candidate and the potential harm of those interests from this instant action. Morrison Br. at 9. Mr. Morrison did not attach to his motion a responsive "pleading that sets out the claim or defense for which intervention is sought," as required under Fed. R. Civ. P. 24(c).

3

The other movants are three non-profit organizations, Vet Voice, California Alliance for Retired Americans, and League of Women Voters of California. ECF 7-1 (hereinafter "CARA Br.") and ECF 8-1 (hereinafter "LWV Br."). All three allege similar protectable voter-related interests for their respective members' right to vote by mail and organizational resource diversion, which they claim both will be impaired should this Court grant Plaintiff relief. CARA Br. at 14-15; LWV Br. at 10-11. All three also argue that Secretary Weber cannot adequately defend the matter on their behalf, since the non-profit organizations have more specific interests, bring different perspectives to the litigation, and may make different arguments. CARA Br. at 19-20; LWV Br. at 12-13. Alternatively, all argue that intervention should be granted permissively.

Because the motions do not meet the standard for intervention by right or permissively, the motions should be denied. Fed. R. Civ. P. 24(a) and (b).

## ARGUMENT

### I. THE COURT SHOULD DENY MOVANTS' REQUEST FOR INTERVENTION AS OF RIGHT.

Fed. R. Civ. P. 24(a)(2) permits intervention only if four elements are satisfied: (1) the request to intervene must be timely; (2) Movants must show "a significantly protectable interest" related to the "property or transaction that is the subject of the action;" (3) Movants must demonstrate they are "situated such that disposition of the action may impair or impede" their ability to protect the interest at stake; and (4) the protectable interest "must not be adequately represented by existing parties." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (citations omitted). Proposed intervenors must satisfy each of these elements to intervene as of right under Rule 24(a)(2). *Id.*[2]

---

[2] Plaintiff does not dispute that all three motions are timely. But timeliness is only one of four requirements a proposed intervenor must satisfy to intervene as of right. Movants have not alleged a sufficiently protectable interest under Rule 24(a) that will be impaired absent intervention and have not demonstrated inadequate representation by the California Secretary of State.

## A. Movants Have No Significantly Protectable Interest.

To show a "significant protectable interest," Movants must (1) assert an interest protected by law, and (2) prove a "relationship" between the legally protected interest and Plaintiff's claims in this litigation. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (citing *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)); *see also United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (citations omitted). Movants will satisfy this "relationship requirement" only if resolving Plaintiff's claims "actually will affect" it. *Donnelly*, 159 F.3d at 410 (citations and quotation marks omitted).

While CARA and LWV Movants sufficiently assert an interest protected by law, namely protecting the voting rights of their members, that interest fails the "relationship requirement" since Plaintiff's claims will not affect their ability to register individuals to vote and have their members vote by mail. *Donnelly*, 159 F.3d at 410. Plaintiff's sole count is that "VBM ballots received after Election Day" are illegal because California's Receipt Deadline is preempted by federal law, and that Defendant, acting under color of state law, is denying Plaintiff of rights secured by the U.S. Constitution. *See* ECF 1 at ¶¶ 72-77. Plaintiff alleges that under the federal Election Day statutes, VBM ballots must be received by Election Day in order to be canvassed. Plaintiff does not challenge the use of VBM to cast ballots, the voting by properly registered overseas military and civilian voters, and the canvassing and procedures that election officials must perform in the days after Election Day.

CARA and LWV Movants do not articulate how Plaintiff's relief would "actually affect" their asserted member voter-related interests. At the outset, CARA Movants distort Plaintiff's claim, arguing he "seeks to restrict the ability of Vet Voice's and CARA's members, supporters, and constituents to successfully cast a mail ballot in California's elections." CARA Br. at 13-14 (citing Compl. at 9-10). But Plaintiff's claims do not, in fact, restrict any California voter from casting a mail ballot. California voters can still do so; they just must do so by the deadline set by

5

Congress. Enjoining Cal. Elec. Code § 3020 does not "restrict the ability" of Movants' members from voting by mail in federal elections any more than it would restrict Movants' members in other states that require Election Day receipt for VBM ballots.[3]

CARA Movants suggest that Plaintiff's relief requested coupled with the "events outside of the voter's control" that may "delay arrival of their ballots," such as "USPS delivery performance degrades" threatens to affect their members' voting rights. CARA Br. at 14-15; Goldbeck Decl. ¶¶ 6-7, 9 (ECF No. 7-2); England Decl. ¶¶ 6-7, 10 (ECF No. 7-3). Plaintiff is not responsible for intervening acts "outside" his (or Movants') control that might frustrate Movants' ability to vote. Stated differently, Movants appear to recognize its interest are threatened by conduct or "events" outside of issues raised in these proceedings.

Further, LWV Movant claims that Plaintiff's relief will risk their members being disenfranchised. *See* LWV Br. at 10 (the "League's thousands of members, like the vast majority of Californians, vote using a mail ballot—and the relief Plaintiff seeks will risk disenfranchising those voters. (citing Hutchison Decl. ¶¶ 6-7, 25-26)). But both LWV and CARA Movants have provided no actual evidence of this occurring to their members due to reasonable VBM deadlines. *See Donald J. Trump for President, Inc. v. Bullock*, 491 F. Supp. 3d 814, 836 (D. Mont. 2020) (rejecting plaintiffs' claim that right to vote would be infringed by mail ballots "never arriving, arriving too late, or completed ballots getting lost or delayed in the return process" since plaintiffs "have failed to provide any proof that Montana's mail system will be unable to process an influx in ballots."). The risk they cite is simply too speculative.

Moreover, "events outside of the voter's control" that may lead to a rejection of VBM ballots is the nature of, and risk applicable to, *all* mail ballots regardless of

---

[3] CARA recognizes that California is in the minority of states that allow ballot receipt *after* Election Day. *See* CARA Br. at 5 n.8 (citing Nat'l Conf. of State Legs., *Tbl. 11: Receipt & Postmark Deadlines for Absentee/Mail Ballots*).

when they are mailed. *See Republican Party v. Degraffenreid*, 141 S. Ct. 732, 736 (2021) (Thomas, J., dissenting) (Tallying mail ballots "tends to be more labor intensive, involves a high degree of subjective judgment (*e.g.*, verifying signatures), and typically leads to a far higher rate of ballot challenges and rejections"). Restrictions on mail balloting is not by itself a burden on the right to vote. *See McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807-08 (1969) ("absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny appellants the exercise of the franchise"). And neither are timing deadlines. *See Democratic Nat'l Comm. v. Wis. State Legis.*, 141 S. Ct. 28, 33 (2020) (Kavanaugh, J., concurring) (The "right to vote is not substantially burdened by a requirement that voters 'act in a timely fashion if they wish to express their views in the voting booth,'" including timing requirements for voters who "wish to cast an *absentee ballot*." (quoting *Burdick v. Takushi*, 504 U.S. 428, 438 (1992))). *See also Rosario v. Rockefeller*, 410 U.S. 752, 760-61 (1973) (holding that New York's timing requirement for registration does not impose an unconstitutional burden on the franchise). Movants have no more interest here than they would in states that adhere to the majority rule requiring Election Day receipt.

For this reason, Movants' authority is misplaced. Both *Issa v. Newsom*, No. 20-CV-01044-MCE-CKD, 2020 U.S. Dist. LEXIS 102013, at *3 (E.D. Cal. June 10, 2020) and *1789 Found. Inc., v. Fontes*, No. CV 24-02987-PHX-SPL, 2025 U.S. Dist. LEXIS 47745, at *3 (D. Ariz. Mar. 17, 2025) involved claims and relief that would have actually affected the intervenors' members' rights to retain mail ballots or register to vote. Plaintiffs in *Issa* sought declaratory and injunctive relief to halt the Governor's Executive Order to issue mail ballots to all registrations in the state, in direct contradiction to state law at that time. *Id.* at *3-4. If plaintiffs prevailed in *Issa*, it would have limited access to VBM ballots to the intervenors' members to cast ballots. Not so here, where Plaintiff is not challenging the VBM ballot itself, but

7

rather whether a state law allowing late-arriving ballots is preempted by federal statute. *Wetzel*, 120 F.4th at 204. It was Congress that made the final determination about the timing of federal elections in 1872, not Plaintiff.[4]

Alternatively, CARA Movants claim an interest related to a diversion of resources. But diverted resources is an Article III injury for organizational standing, not an automatic interest as of right for intervention. Though it is unclear if Article III injury is necessary to obtain intervention of right in the Ninth Circuit, *see Perry*, 587 F.3d at 950 n.2, it is certainly not *sufficient* to satisfy the interest requirement for intervention. For good reason: An Article III injury can be "minimal." *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) (citing *Counsel of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008) ("an identifiable trifle" is sufficient for standing)). And standing is independent of the merits of the Plaintiff's claims. *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 298 (2022) (when evaluating standing, federal courts must "accept as valid the merits of [plaintiffs'] legal claims" (citation omitted)). By contrast, Rule 24(a) requires the interest in the claims to be "significantly protectable" and "must relate to the litigation in which it seeks to intervene."[5] *Glickman*, 82 F.3d at 837 (citation omitted).

Organizations routinely divert resources in response to changes to election administration. If diversion of resources were a "significantly protectable" interest related to the claims in this litigation, then this element would be automatically satisfied for *all* public interest organizations for *all* election-related claims. That would be a gross departure from the text of Rule 24(a). Diversion of resources is not an interest protected by law. It is simply an Article III injury that allows organizations to sue to remedy violations of some other legal obligation.

---

[4] There is no timing issue here, unlike *Issa* and *Fontes* where Election Day was fast approaching. Here, whatever the outcome of these proceedings, voters will have plenty of time to get their votes in timely.

[5] Indeed, the interest alleged here by Movants relates to potential remedies, *not* to merits of the Plaintiff's substantive claims.

For his part, Mr. Morrison asserts a more specific interest, but it also falls short. He claims a significantly protectable interest "to have his own absentee ballot counted, should it be late-filed," and "right to be elected to Congress." Morrison Br. at 6. But the former interest is that of a voter to cast a late-arriving VBM ballot, which suffers from the same flaws as CARA and LWV Movants' voting members. While the latter is not a recognized legal right. No individual has a "right to be elected to Congress." They have a legal right to run and stand for office, but Mr. Morrison can still do that regardless of the outcome of this litigation, provided he complies with all the California requirements to qualify and appear on the ballot for the California primary.[6] To Plaintiff's knowledge, Mr. Morrison has not done so, yet.[7] Moreover, the Election Day statutes at issue here concern only the *general election*, not any primary election. California may continue to accept late-arriving VBM ballots after the day of any primary election without running afoul of the Election Day statutes. Mr. Morrison's interest as a candidate in the *general election* is entirely speculative. It depends on him qualifying for the primary ballot *and* winning the primary, or at least finishing second. For that reason, Mr. Morrison's interest as a candidate at this stage is not a significantly protectable one. *See Fisher v. Arizona*, 594 Fed. App'x 917, 920 (9th Cir. 2014) ("intervenor cannot rely on interest that is remote and speculative" (citing *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010)).

### B.    Movants' Interest is Not Impaired By This Litigation.

For the same reasons Movants cannot show a significantly protectable interest, their interests are not impaired absent intervention. But "[e]ven if this lawsuit would *affect* the proposed intervenors' interests, their interests might not

---

[6] Similarly, any voter-based interest about a risk that his ballot will arrive late is entirely speculative at this point.

[7] The only evidence Mr. Morrison provided of his "intention to run for Congress as a Democrat in 2026 in the 48th Congressional District" is a YouTube video that purports to show him at a public gathering making the oral announcement. *See* Morrison Br. at 2 n.3.

9

be *impaired* if they have 'other means' to protect them." *State ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (citing *Alisal Water Corp.*, 370 F.3d at 921). In other words, if a party has an independent legal action or private remedy available to them to protect their interests, it precludes a finding of impairment absent intervention. *See Donnelly*, 159 F.3d at 409-12 (affirming denial of motion to intervene where male employees' were "undeniably" covered by Title VII and could have, therefore, brought their own discrimination lawsuits); *Hawaii-Pacific Venture Capital Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977) (noting lack of impairment where movants were free to bring their individual claims in independent actions); *United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002) (finding it "doubtful" that the community intervenors' interests would be impaired because the litigation did "not prevent any individual from initiating suit against [defendants] who engage in unconstitutional practices").

All of Movants' voter and candidate-related interests can be remedied by state and federal law. Vet Voice overseas and military members in California could bring an action for injunctive relief to enforce the requirements for distribution of mail ballots under Cal. Elec. Code § 3123(a), and can do so independently of any outcome in this action. For any other member denied the right to vote or stand for office, 42 U.S.C. § 1983 provides remedies and private actions against the State for violations of the First and Fourteenth Amendment, while Section 2 of the federal Voting Rights Act grants a private cause of action where voting restrictions or procedures "result[] in a denial or abridgement" of a citizen's right to vote "on account of race or color . . . ." 52 U.S.C. § 10301(a). Candidates may also bring actions under 42 U.S.C. § 1983 for violations of their right to stand for office, which Plaintiff has done so here.

All Movants have "other means" to protect their interests absent intervention and cannot reasonably claim otherwise. Accordingly, their interests are not impaired.

1

2

3    **C.    Secretary Weber Can Adequately Defend Movants' Interests.**

4

5        i.    *The Presumption of Adequacy Applies and Movants Have Shown No Evidence to Rebut the Presumption.*

6        The Ninth Circuit considers three factors in determining adequacy of

7    representation: (1) whether the interest of a present party is such that it will

8    undoubtedly make all of a proposed intervenor's arguments; (2) whether the present

9    party is capable and willing to make such arguments; and (3) whether a proposed

10    intervenor would offer any necessary elements to the proceeding that other parties

11    would neglect. *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th

12    Cir. 1986) (citations omitted). The default standard is the proposed intervenors must

13    show that representation "may be" inadequate, which is a "minimal" burden. *Arakaki*

14    *v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted).

15        But the Ninth Circuit applies a presumption of adequacy in two types of cases.

16    First, "[w]hen an applicant for intervention and an existing party have the same

17    ultimate objective," or where the "interest is identical to that of one of the present

18    parties," there is "a presumption of adequacy of representation." *Arakaki*, 324 F.3d

19    at 1086 (citation omitted). In such cases, "a compelling showing should be required

20    to demonstrate inadequate representation." *Id.* (citation omitted). Second, there is an

21    "assumption of adequacy when the government is acting on behalf of a constituency

22    that it represents." *Prete v. v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006). When the

23    state government shares the same interest, a "'very compelling showing to the

24    contrary,'" is needed to overcome the presumption. *Arakaki*, 324 F.3d at 1086 (citing

25    7C Wright, Miller & Kane, § 1909, at 332); *see Pest Comm. v. Miller*, 648 F. Supp.

26    2d 1202, 1213-14 (D. Nev. 2009) (applying heightened standard where the Nevada

27    Secretary of State and the intervenors shared the same interest). "Where parties share

28

the same ultimate objective, differences in litigation strategy do not normally justify intervention." *Arakaki*, 324 F.3d at 1086 (citation omitted).

CARA Movants do not cite the heightened presumption of adequacy recognized in this circuit for state governmental defendants. Instead, they cite out of circuit case law that found "governmental entities do not adequately represent the interests of aspiring intervenors." CARA Br. at 19 (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)). Reliance on *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 194–97 (2022) is also unhelpful to CARA Movants' position. *Berger* involved *legislative governmental* intervenors who attempted to intervene. The Supreme Court found the presumption of adequacy of representation inappropriate whenever a legislative governmental body attempts to intervene to defend state law alongside state governmental defendants, regardless of whether the defendants share similar goals. *See id.* at 197. The Court did "not decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government." *Id.* In other words, the presumption of adequacy standard under *Arakaki*, 324 F.3d at 1086 and *Prete*, 438 F.3d at 956, remains controlling law in this circuit.[8] CARA Movants have provided no argument or support for why this standard should be set aside here.

To the extent that the district court cases CARA Movants cite in this circuit did not apply the presumption of adequacy in election cases, Plaintiff submits those cases were issued during the 2020 election cycle on expedited and truncated proceedings and were wrongly decided. CARA Br. at 19 (citing, *inter alia*, *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445 JCM (VCF), 2020 U.S. Dist. LEXIS

---

[8] The Ninth Circuit subsequently noted that the Supreme Court's decision in *Berger* "calls into question whether the application of such a presumption is appropriate" under *Arakaki*. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022). But the Ninth Circuit declined to overrule the presumption in *Arakaki* since the intervenor's interest in *Callahan* was "identical to that of an existing party." *Id.* (citing *Arakaki*, 324 F.3d at 1086). The presumption for adequacy for private litigants seeking to intervene alongside state governments is still the law of this Circuit.

164119, at *1 (D. Nev. Aug. 21, 2020); *Paher v. Cegavske*, No. 3:20-CV-00243-MMD-WGC, 2020 U.S. Dist. LEXIS 74095 (D. Nev. April 28, 2020)). The district court in *Paher*, for instance, found lack of adequate representation because intervenors have more specific interests and "may" make alternative arguments, despite the intervenors and existing defendants "presumably share the goal" of protecting the all-mail ballot provisions at issue. 2020 U.S. Dist. LEXIS 74095, at *7-*8. Sharing the same goals between proposed intervenors and existing governmental defendant is one circumstance where the presumption of adequacy applies in the Ninth Circuit. *Arakaki*, 324 F.3d at 1087 (applying the presumption where proposed intervenor "share[d] the same ultimate objective as the State and its agencies"). The district court in *Paher*, however, declined to apply the presumption. And, the district court in *Cegavske*, 2020 U.S. Dist. LEXIS 164119, "summarily granted the intervention request 'without opining on the merits' due to the exiting litigants' non-opposition" to the intervention motion. *Mussi v. Fontes*, No. CV-24-01310-PHX-DWL, 2024 U.S. Dist. LEXIS 122651, at *15 (D. Ariz. July 12, 2024). Certainly, CARA Movants' authority is not helpful in showing they made the requisite showing of inadequacy of representation.

Likewise, LWV Movant has not shown that the presumption is inapplicable here. LWV argue that their interests are not identical to the existing Defendant (or other movants) since "Defendant is responsible for ensuring compliance with the Elections Code," while "the League has distinct and particular interests in protecting its members' personal right to vote." LWV Br. at 13. But ideological and political organizations always have more "particular interests" than the state. If that was enough to show inadequacy, the element would be automatically satisfied by *all* public interest organizations in California engaged in election-related activities. *See Stuart v. Huff*, 706 F.3d 345, 353 (4th Cir. 2013) ("stronger, more specific interests … cannot be enough to establish inadequacy of representation since would-be intervenors will nearly always have intense desires that are more particular than the

13

state's"). Finding those interests sufficient "to rebut the presumption of adequacy would simply open the door to a complicating host of intervening parties with hardly a corresponding benefit." *Id. See also Prete*, 438 F.3d at 957-59 (applying the presumption of adequacy despite public interest organization claiming more specialized interest and knowledge with respect to Oregon's election procedures since they had the same ultimate objective as the Oregon Secretary of State in defending the ballot measure); *Mussi*, 2024 U.S. Dist. LEXIS 122651, at *7 (applying the presumption under *Arakaki* where public interest organizations sought to intervene as defendants alongside the Arizona Secretary of State defending Arizona's voter list maintenance practices).

Finally, Mr. Morrison does not cite a single authority for why the presumption does not apply to his situation. *See generally* Morrison Br. at 8-9. Mr. Morrison's more specific interest of defending validly cast VBM ballots so as not to impact his candidacy for California's 48th Congressional District and Mr. Morrison's speculation that Secretary Weber "should not be expected" to make all necessary arguments to support this interest does not rebut the presumption. *See Prete*, 438 F.3d at 958. Mr. Morrison has shown no evidence that Secretary Weber is not capable of making these arguments or defending his interest in the 48th Congressional District.

All four Movants suffer from the same flaw. They are all private parties with similar interests attempting to intervene to defend a state statute alongside the existing state governmental party charged by law to defend that statute. The named defendant here is the Secretary of State, who are represented by the Attorney General and the California Department of Justice. In California, the Secretary of State in particular "is the chief elections officer of the state," responsible for "administer[ing] the provisions of the Elections Code" and for "see[ing] that . . . state election laws are enforced." Cal. Gov. Code § 12172.5(a). CARA and LWC Movants' proposed answer in intervention under Rule 24(c) asks the Court to "den[y] that Plaintiff is entitled to the requested relief or any other relief" and both pleadings provide similar

affirmative defenses. ECF 8-3 at 8. *See also* ECF 7-4 at 8 ("Proposed Intervenors deny that Plaintiff is entitled to any of the requested relief or any other relief.").[9] In sum, Movants have the same ultimate objective as the state official charged by law with administering and enforcing the voting laws. They must make a "very compelling showing" that they are not adequately represented by the existing Defendant. Movants do not come close to meeting that standard. Looking beyond their motion, there is nothing else in the record that would rebut this presumption. *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (Intervenor "failed to offer persuasive evidence, at the time of their motion to intervene, that [the government's] broader interests would lead it to stake out an undesirable legal position.").[10]

### ii. *Alternatively, Movants Have Not Demonstrated Inadequacy of Representation Under the Default Standard.*

Even if the presumption of adequacy does not apply, Movants have failed to meet their burden to show any inadequate representation at this stage of the litigation under the default standard. Under that standard, inadequate representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). CARA and LWV Movants are correct that this burden is minimal.

---

[9] Mr. Morrison did not submit the required pleading under Rule 24(c) for intervention. While such a pleading is not *per se* fatal to a motion to intervene, *see Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009), it is more difficult for Plaintiff to evaluate Mr. Morrison's legal position as it relates to the existing parties. In any event, Mr. Morrison still has not met the required showing under Rule 24(a) for inadequacy of representation.

[10] Due to the early stages of the case, there are no dispositive motions or responsive pleadings filed in the action. Plaintiff consented to Defendant's request for an extension to file a responsive pleading to May 19, and this Court entered an order granting that request. ECF 5. Organizational Movants' proposed answer set forth their "the claim[s] or defense[s] for which intervention is sought." Fed. R. Civ. 24(c). Any argument at this stage that Defendant is not defending Movants' interests is purely speculative. Should factual circumstances arise in the future showing Defendant's unwillingness to defend the action, then Movants may move to intervene at that time.

*Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983); *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001). But "[a]lthough the burden of establishing inadequacy of representation may be minimal, the requirement is not without teeth." *Prete*, 438 F.3d at 956; *see also Cajun Elec. Power Co-op., Inc. v. Gulf States Utilities, Inc.*, 940 F.2d 117, 120 (5th Cir. 1991) (minimal burden "cannot be treated as so minimal as to write the requirement completely out of the rule" (citation omitted)). Proposed intervenors must still carry the burden to show there is some possible conflict between them and the existing defendant. *See Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 690 (7th Cir. 2023) (noting the circumstances where intervenors could show representation may be inadequate).

In *Bost*, the plaintiffs challenged a similar law in Illinois that allowed receipt of VBM ballots by 14 additional days after Election Day. 75 F.4th at 685. The Democratic Party of Illinois sought to intervene as of right or permissively as a defendant, arguing similar interests to Movants here, namely protecting their members' rights to vote by mail ballot and that plaintiffs' requested relief would threaten to disenfranchise them if plaintiffs succeeded. *Id.* at 686. The Seventh Circuit found that the interests between the Democratic Party of Illinois and the existing state defendants to be sufficient for the default standard, but held they could not show any possible conflict between them and the State Board's defense of the lawsuit to meet their minimal burden. *Id.* at 689-90. The Court found it was not enough that the Democratic Party of Illinois had diverging interests from the state government defendants and the organization could not point to any argument in the record that the state had not already made in defending the law. *Id.* at 690.

Similarly here, CARA and LWV Movants have not identified any possible conflict between their organizations and the existing Defendant to show inadequate representation. CARA and LWV Movants cite their divergent interests from Defendant as proof that representation may be inadequate. *See* CARA Br. at 18 (Secretary Weber has a "broader public interest, and not the acute concerns that

16

organizations like Vet Voice and CARA have in protecting mail voting for their members"); LWV Br. at 13 ("Government officials, like the named Defendant, broadly represent the public interest, not the particular concerns of the League"). "But the comparison of interests determines which of the three adequacy tests applies," and that "alone cannot also make the showing required under the default rule to prove inadequacy." *Bost*, 75 F.4th at 690. "If that were the case, then the default rule would simply be that intervention as of right is automatic." *Id. See also Oakland*, 960 F.3d at 620 (Intervenors' "narrower interest" is insufficient to demonstrate inadequate representation unless there is "persuasive evidence, at the time of their motion to intervene, that [defendant's] broader interests would lead it to stake out an undesirable legal position").

Alternatively, both CARA and LWV Movants claim they can show inadequacy by speculating they may need to present arguments that are different from Secretary Weber. CARA Br. at 21; LWV Br. at 13 ("Defendant, by contrast, may seek to emphasize jurisdictional defenses such as standing over the merits"). But this type of speculation has already been rejected by the Ninth Circuit. *See Prete*, 438 F.3d at 958 (rejecting contention that defendant "may be inclined" to argue "an unnecessarily narrow construction" of a law where defendant did not, in fact, "argue[] for a narrowing construction"); *Oakland*, 960 F.3d at 620. Where "a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has rested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status." *Callahan*, 42 F.4th at 1021 (citation omitted).

Seemingly acknowledging the lack of evidence in the record that might show inadequate representation here, CARA Movants point this Court to a separate action filed against Secretary Weber in an unrelated state court proceeding. *See* CARA Br. at 21 (citing *Cal. All. for Retired Ams. v. Weber*, No. 24STCP02062 (Cal. Super. 2024)). Putting aside the dubious nature of this argument, an unrelated state court

17

proceeding has no bearing on the question of whether Secretary Weber is adequately defending Movants' interests here. If anything, it shows that Secretary Weber *does* defend actions brought against the Secretary of State's office. At this stage, CARA and LWV Movants provide nothing except speculation about what arguments Secretary Weber may or may not make *in this case*. That is insufficient to show representation "may be" inadequate under the default standard.

## II.  THE COURT SHOULD DENY MOVANTS' REQUEST FOR PERMISSIVE INTERVENTION

"An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412 (citation omitted); *see* Fed. R. Civ. P. 24(b). Yet "[e]ven if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly*, 159 F.3d at 412 (citations omitted). "In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.* (citing, *inter alia*, Fed. R. Civ. P. 24(b)(2)). Courts may also look to:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case, . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Several factors warrant denying permissive intervention here.

First, Movants have failed to identify a common question of law and fact with the existing parties. Movants' stated concerns—allowing their members to vote by mail, increase voter advocacy and education, reduced costs related to resource diversion, and rights to run as candidate for office—are not at issue in this litigation.

18

As discussed above, California law already accommodates most of these concerns. Movants can still vote absentee or by mail, Mr. Morrison can still run for office, and may do so regardless of the relief Plaintiff seeks against Secretary Weber. Movants must, however, do so by the deadline set by Congress. Movants' claim in law or fact are no different than those in any of the majority of states that currently mandate Election Day receipt of VBM ballots.

Second, Movants' intervention will not "significantly contribute to … the [litigation's] just and equitable adjudication." *Spangler*, 552 F.2d at 1329 (citation omitted). Plaintiff has raised purely legal claims – whether Cal. Elec. Code § 3020 is unconstitutional – and Movants "present[] no new questions" raised by that issue. *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984). Any additional parties would "merely underline[] issues of law already raised by the primary parties." *Id.* In such cases, public interest organizations and political groups on behalf of candidates for office are granted rights as *amici*, not full party status. *See e.g.*, *Valley View Health Care, Inc. v. Chapman*, No. 1:13-CV-0036-LJO-BAM, 2013 U.S. Dist. LEXIS 122112, at *28-*29 (E.D. Cal. Aug. 27, 2013) ("The 'factual' development proposed by Proposed Intervenors does not aid in adjudication of a purely legal issue."); *Bost*, 75 F.4th at 691 (affirming Democratic Party of Illinois' denial of permissive intervention in Election Day dispute because the Party's "legal interests and arguments are closely aligned with those of the Board").

Third, because Movants are already adequately represented by Secretary Weber, any additional defendants would cause prejudice and undue delay without a corresponding benefit. "Additional parties always takes additional time," since "they are the source of additional questions, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair." *Viterna*, 740 F.2d at 359. *See also Valley View*, 2013 U.S. Dist. LEXIS 122112, at *29 ("The Court finds that while the Proposed Intervenors may have a unique point of view and expertise, intervention … is likely to result in a delay in the proceedings and duplicative briefing, adding a layer

19

of unwarranted procedural complexity."). When those additional parties are already adequately represented by the state, it counsels further against permissive intervention due to undue delay. *See Perry*, 587 F.3d at 955 ("The district court's denial of [permissive] intervention based on the identity of interests of the Campaign and the Proponents and the Proponents' ability to represent those interests adequately is supported by our case law on intervention in other contexts"); *Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269, 276 (D. Ariz. 2020) (denying permissive intervention since "the Court doesn't see how Proposed Intervenors can more adequately defend state laws than the State itself").

In elections cases, there will *always* be another public interest group, voter, or candidate for office with a similar interest in protecting their members' voting rights in defending an election law or regulation. In Plaintiff's prior experience in challenging allegedly unconstitutional voting laws in California, there were no less than seven political and voter-related organizations moving to intervene as defendants. *See Issa, et al. v. Newsom, et al.*, No. 2:20-cv-1044 (E.D. Cal. 2020) (ECF No. 12) (Motion to Intervene by Democratic Congressional Campaign and Democratic Party of California); (ECF No. 33) (Motion to Intervene by California Common Cause, League of Women Voters of California, and Community Coalition); (ECF No. 41) (Motion to Intervene by LULAC and California LULAC). Moreover, there were *six* candidates for California's 48th Congressional District primary in June 2024, including four Democratic Party candidates for the seat. Granting permissive intervention to such political organizations and parties when they are already adequately represented risks "turn[ing] the court into a forum for competing interest groups," *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 533 (7th Cir. 1988), or "Donnybrook Fair," *Viterna*, 740 F.2d at 359, with duplicative, overlapping arguments and no corresponding benefit.

1

## CONCLUSION

2      The motions to intervene as of right or permissively by Mr. Curtis Morrison,

3   Vet Voice, California Alliance for Retired Americans, and League of Women

4   Voters California should be denied.

5

6

7

8   Dated:  May 2, 2025                    Respectfully submitted,

9

10                                         */s/ Eric Lee*
                                           Eric Lee (SBN 327002)
11
                                           ROBERT PATRICK STICHT
12                                         Judicial Watch, Inc.
                                           425 Third Street SW, Suite 800
13                                         Washington, D.C. 20024
                                           Tel.: (202) 646-5172
14                                         Facs.: (202) 646-5199
                                           Email: Elee@judicialwatch.org
15                                         Email: Rsticht@judicialwatch.org

16
                                           *Attorneys for Plaintiff Darrell Issa*
17

18

19

20

21

22

23

24

25

26

27

28

21