SHILPI AGRWAL (SBN 270749)
sagarwal@aclunc.org
ANGELICA SALCEDA (SBN 296152)
asalceda@aclunc.org
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493

ARI SAVITZKY (NY 5060181)*
asavitzky@aclu.org
THERESA J. LEE (NY 5022769)*
tlee@aclu.org
SOPHIA LIN LAKIN (NY 5182076)*
slakin@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

JULIA A. GOMEZ (SBN 316270)
jagomez@aclu-sdic.org
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
(619) 398-4199

PETER ELIASBERG (SBN 89110)
peliasberg@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5232

Counsel for Intervenor-Defendant
League of Women Voters of California

*Admitted pro hac vice

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL ISSA,<br><br>      Plaintiff,<br><br>vs.<br><br>SHIRLEY N. WEBER, in her official capacity as Secretary of State of California,<br><br>      Defendant. | Case No.: 25-cv-598-AGS-JLB<br><br>**RESPONSE OF THE LEAGUE OF WOMEN VOTERS OF CALIFORNIA TO THE MOTION TO STAY ALL PROCEEDINGS** |

# INTRODUCTION

Plaintiff seeks a stay of all proceedings in this case in light of the grant of certiorari in *Bost v. Illinois State Board of Elections*, No. 24-568 (U.S. cert. granted June 2, 2025). *See* Mot., ECF No. 39. *Bost* involves a challenge by an Illinois Congressman and two presidential electors to Illinois' ballot-receipt deadline. The Court granted certiorari on a single question: "[W]hether Petitioners, as federal candidates, have pleaded sufficient factual allegations to show Article III standing to challenge state time, place, and manner regulations concerning their federal elections." *See* Pet. at i, *Bost v. Ill. Bd. of Elections.*, No. 24-568 (U.S. Nov. 19, 2024).

Intervenor-Defendant the League of Women Voters of California (the "League") opposes a complete stay of all proceedings in light of *Bost* as unnecessary and contrary to the public interest. For purposes of the Rule 12 stage, Congressman Issa's allegations relating to standing are sufficient for the Court to exercise jurisdiction and dismiss on the merits notwithstanding *Bost*. And even if the Court wished to wait for a decision in *Bost* before issuing any merits ruling, the public interest would be best served by briefing any contemplated motions to dismiss in the interim so that they may be decided expeditiously after *Bost* is decided, as far in advance of the 2026 midterms as possible.

# ARGUMENT

A district court "has discretionary power to stay proceedings in its own court." *Safeco Ins. Co. of Am. v. Nelson*, No. 20-cv-00211, 2020 WL 3791675, *4 (S.D. Cal. 2020) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). In the interest of judicial efficiency and fairness to parties, a trial court may "with propriety . . . enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Prescott v. Rady Child.'s Hosp.-San Diego*, 265 F.Supp.3d 1090, 1098 (S.D. Cal. 2017) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)). The power to

stay proceedings requires an "exercise of judgment, which must weigh competing interests and maintain an even balance." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).

When deciding whether to issue such a stay, courts examine three non-exclusive factors: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)); *accord Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023). The first two factors effectively measure the relative hardship on the parties from the grant or denial of a stay. *See Safeco Ins. Co.*, at *4–5 (citing *Lockyer*, 398 F.3d at 1110 and *CMAX*, 300 F.2d at 268). Some level of hardship or inequity from proceeding with the litigation is typically required. *See In re PG&E*, 100 F.4th at 1085 (citing *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007)); *Prescott*, 265 F.Supp.3d at 1098.

For two reasons, the applicable considerations militate against a total stay pending the decision in *Bost*.

*First*, a stay is not necessary in order for the Court to determine its jurisdiction sufficient to decide a Rule 12 motion to dismiss. Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057–58 (9th Cir. 2023) (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, at the pleading stage, the question is whether "the complaint's factual allegations of Article III standing are . . . adequate." *Id.* at 1058. (However, where a plaintiff seeks a preliminary injunction, or summary judgment, standing must be

1  supported with evidence. *Id.*; *see also Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir.
2  2020) ("At [the] preliminary injunction stage, [plaintiff] 'must make a clear showing
3  of each element of standing.'" (quoting *Townley v. Miller*, 722 F.3d 1128, 1133 (9th
4  Cir. 2013)).)

5        Here, Issa's Complaint sets forth facts supporting at least one theory of
6  standing that is sufficient for purposes of deciding the case at the pleadings stage
7  (whether or not it would ultimately be supported by evidence at some later stage).
8  Specifically, Issa pleads that he expends campaign resources, including volunteer
9  hours, to "monitor late arriving VBM ballots during the period after Election Day."
10 Compl. ¶ 48; *see also id.* ¶¶ 45, 75.  He pleads with sufficient specificity that such
11 activities are part of his campaign strategy, as such monitoring may be needed "to
12 challenge or otherwise respond to situations arising during that canvassing" during
13 the seven-day receipt period." *Id.* ¶ 47.  He pleads that the seven-day period causes
14 him to "use the campaign's limited resources to organize and monitor late arriving
15 VBM ballots during the period after Election Day," which "increases expenses and
16 other resources needed for [him] to organize and monitor post-election canvassing"
17 relative to the expenses he had for such activities prior to 2015.  Compl. ¶¶ 45-52.

18       Such a diversion of volunteer or other operational resources can constitute an
19 injury-in-fact sufficient to support Article III standing.  *See Election Integrity*
20 *Project California, Inc. v. Weber*, No. 21-56061, 2022 WL 16647768, at *1 (9th
21 Cir. Nov. 3, 2022) (unpublished) (citing, inter alia, *E. Bay Sanctuary Covenant v.*
22 *Biden*, 993 F.3d 640, 663 (9th Cir. 2021)).  Indeed, standing for organizations based
23 on a "diversion-of-resources" injury is well-established in the Ninth Circuit: "[A]
24 diversion-of-resources injury is sufficient to establish organizational standing" for
25 purposes of Article III, "if the [plaintiff] shows that, independent of the litigation,
26 the challenged 'policy frustrates the organization's goals and requires the
27 organization 'to expend resources in representing clients they otherwise would
28 spend in other ways.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 765

(9th Cir. 2018) (citations omitted). And this type of diversion-of-resources based injury was reaffirmed by the Supreme Court last term in *FDA v. Alliance for Hippocratic Medicine*, where the Court explained that, while an advocacy organization cannot simply spend its way into an Article III injury by opposing policies it does not like, where the challenged policy "directly affect[s] and interfere[s] with [the plaintiff's] core business activities," that is sufficient to create a justiciable controversy. 602 U.S. 367, 395 (2024).

At least for purposes of the pleading stage, Issa has plausibly alleged that the receipt deadline causes him to alter his preexisting campaign conduct and expend campaign resources that he previously did not need to expend. In *Bost*, by contrast, the complaint contained no plausible or particular allegations about the congressional candidate plaintiff's diversion of resources. *Compare* Compl. ¶ 33, *Bost v. Illinois State Board of Elections*, No. 22 Civ. 2754 (N.D. Ill. May 25, 2022), ECF No. 1 (alleging generally and without more that "Plaintiffs rely on provisions of federal and state law in conducting their campaigns including, in particular, resources allocated to the post-election certification process.") *with* Compl. ¶¶ 45-52, 75.

Issa's diversion theory, plausibly pleaded here, is distinct from the type of "federal candidate" standing theory that is center stage in *Bost*. (Issa separately attempts to plead a candidate or competitive theory of standing as well, Compl. ¶¶ 56-61.) Because this diversion-of-resources-based standing is independently sufficient, any result in *Bost* that focuses on the viability of "federal candidate" standing theories would make no difference here. Either way, there is a justiciable controversy for purposes of the Rule 12 stage, and a complete stay of all proceedings is not warranted.

*Second*, while there is no particular hardship that would stem from proceeding at least with Rule 12 motions, there *is* potential damage from the grant of a complete stay. Issa indicates that the Court is likely to hear argument in *Bost* in October or

November of 2025. Mot. at 1 n.1, ECF No. 39. But the Court may not issue a decision until the Spring of 2026. And a complete stay of all proceedings would require that, after *Bost* issues, the briefing on any dispositive motions (and any motions for preliminary relief) would start from square one, potentially adding at least another two or three months before such motions were teed up for argument and a decision.[1] A complete stay thus risks pushing a decision on the underlying merits issue out until the period just before the November 2026 election.

Deciding such matters close to the election could cause confusion or other harms for candidates, voters, and election administrators. *Cf. Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring) ("When an election is close at hand, the rules of the road must be clear and settled. Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others."). The Court can and should avoid those risks. Especially absent the moving party's showing of hardship or inequity, a stay is likely inappropriate "if there is even a fair possibility that the stay . . . will work damage to someone else." *Dependable Highway*, 498 F.3d at 1066 (quoting *Landis*, 299 U.S. at 255).

Such harms could be avoided by simply proceeding with this case, or by ordering a partial stay that allows, at least, briefing on any motions to dismiss to proceed. Allowing such briefing to proceed will ensure that, even if the Court ultimately wishes to reserve any decision pending the outcome of *Bost*, it will be able to decide those motions expeditiously and ensure that the "rules of the road" are settled farther in advance of the 2026 midterms.[2]

---

[1] This estimate, which is consistent with the length of the existing briefing schedule, *see* ECF No. 38, does not take into account any jurisdictional discovery that might need to occur if a preliminary injunction is sought.

[2] If the Court decides to proceed with the briefing of such motions but reserve decision until after *Bost* is decided, it can adjourn or push out the current October 3

# CONCLUSION

For the foregoing reasons, the Court should deny the motion for a complete stay and set a revised briefing schedule for Rule 12 motions to dismiss.

Dated: June 13, 2025

Respectfully submitted,

/s/   Ari J. Savitzky
ARI SAVITZKY (NY 5060181)*
asavitzky@aclu.org
THERESA J. LEE (NY 5022769)*
tlee@aclu.org
SOPHIA LIN LAKIN (NY 5182076)*
slakin@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

JULIA A. GOMEZ (SBN 316270)
jagomez@aclu-sdic.org
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
(619) 398-4199

SHILPI AGARWAL (SBN 270749)
sagarwal@aclunc.org
ANGELICA SALCEDA (SBN 296152)
asalceda@aclunc.org
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493

---

hearing date and order the parties to simultaneously file supplemental briefing on *Bost* within some brief period after the Supreme Court issues its decision.

| | |
|---|---|
| 1 | |
| 2 | PETER ELIASBERG (SBN 189110) |
|   | peliasberg@aclusocal.org |
| 3 | ACLU FOUNDATION OF SOUTHERN CALIFORNIA |
| 4 | 1313 West 8th Street |
| 5 | Los Angeles, CA 90017 |
|   | (213) 977-5232 |
| 6 | |
| 7 | Counsel for Intervenor-Defendant |
|   | League of Women Voters of California |
| 8 | |
| 9 | *Admitted pro hac vice |